# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2008-IA-01370-SCT

*ANDRIA SAWYERS*

*v.*

*HERRIN-GEAR CHEVROLET COMPANY, INC.*
*AND AMERICAN BANKERS INSURANCE*
*COMPANY OF FLORIDA*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/30/2008 |
| TRIAL JUDGE: | HON. ROBERT WALTER BAILEY |
| COURT FROM WHICH APPEALED: | WAYNE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | TIMOTHY J. MATUSHESKI |
| ATTORNEYS FOR APPELLEES: | BRENDA B. BETHANY |
| | C. MICHAEL ELLINGBURG |
| | ROSEMARY GWIN DURFEY |
| | WALTER D. WILLSON |
| | KEVIN ALAN ROGERS |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED - 01/07/2010 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CARLSON, PRESIDING JUSTICE, FOR THE COURT:**

¶1.    Andria Sawyers filed suit against Herrin-Gear Chevrolet Company, Inc. (Herrin-Gear)

and American Bankers Insurance Company of Florida (American) in the Circuit Court of

Wayne County, alleging fraud, breach of contract, and bad faith.  Herrin-Gear filed its

Motion to Compel Arbitration, joined by American, which the trial court granted.  Sawyers

thereafter filed with us a petition for interlocutory appeal, which we granted.  *See* M.R.A.P.

5. Although Herrin-Gear and American assert no error in the trial court's grant of arbitration, they do argue that, pursuant to the Federal Arbitration Act (FAA), this Court lacks jurisdiction to consider the merits of this appeal, because the trial court's order granting arbitration is interlocutory in nature and not a final, appealable order. Finding today that this Court has jurisdiction to consider the merits of this appeal, we find no error in the circuit court's order granting defendants' motion to compel arbitration, and we thus affirm.

### FACTS AND PROCEEDINGS IN THE TRIAL COURT

¶2. On August 18, 2003, Andria Sawyers purchased a 2002 Ford Explorer from Herrin-Gear, along with a "GAP Asset Protection Deficiency Waiver Addendum" (GAP waiver) administered by American at an additional cost of $495. Sawyers financed the Explorer through Nuvell Credit Corporation (Nuvell). Sawyers alleges that Herrin-Gear's sales agent represented that "American's GAP covers Plaintiff for the difference between the amount her primary insurer pays Nuvell for a total loss and the total amount Plaintiff owes Nuvell for the vehicle, with no exceptions." During the transaction, Sawyers also signed an arbitration agreement.

¶3. In her complaint, filed April 24, 2008, in the Circuit Court of Wayne County, Sawyers alleged that, after she was involved in an automobile accident on December 14, 2007, her primary automobile insurer determined that the Explorer was a total loss, and agreed to pay her $10,168.75 on her claim. Sawyers claimed that on February 28, 2008, American's adjuster, Assurant Solutions, sent Sawyers a check and a letter indicating that at the time of the accident, she owed Nuvell $14,234.55. Thus, the difference between the amount paid by

2

Sawyers's primary automobile insurer and the remaining amount that Sawyers owed Nuvell was $4,065.80.[1] According to Sawyers, American did not pay the entire difference owed under the GAP waiver, but instead made deductions for interest as a result of missed principal payments, and late fees and other charges because of missed principal payments and extensions, resulting in a final payment by American of only $686.43. Sawyers alleged that American, having paid $686.43 to Nuvell, owed an additional $3,455.12 under the GAP waiver.[2]

¶4. Sawyers further alleged that she had purchased the GAP waiver in reasonable reliance on the sales agent's misrepresentation that the GAP waiver would pay the entire amount she owed to Nuvell. She asserted claims for fraud, breach of contract, and bad-faith refusal to pay an insurance claim. Sawyers demanded $3,455.12 in contractual damages, additional damages for emotional distress, punitive damages, prejudgment interest, and attorney's fees and costs. Sawyers demanded a judgment in the amount of $74,999 and waived any damages recovered in excess of this demand.

¶5. On June 9, 2008, Herrin-Gear filed a motion to compel arbitration, a motion to dismiss for insufficiency of service of process, and an answer and defenses. Herrin-Gear invoked its

---

[1]In the complaint, Sawyers erroneously stated that the difference between the $10,168.75 that her primary automobile insurer paid and the $14,234.55 that she owed Nuvell was $4,141.55. The calculation actually yields a difference of $4,065.80.

[2]Subtracting the $686.43 which American paid from the $4,065.80 difference yields $3,379.37.

contractual right to arbitration under the arbitration agreement signed by Sawyers and an agent of Herrin-Gear, which contained the following language:

> Except for an action by Dealer to obtain possession and/or replevin of the Vehicle, any controversy or claim between Buyer(s)/Lessee(s) and Dealer arising out of or relating to: (1) the Offer to Purchase or Lease Vehicle executed by Buyer(s)/Lessee(s) in connection with the purchase or lease of the Vehicle, (2) the related contract for the purchase or lease of the Vehicle and/or (3) any and all related finance, insurance, extended warranty and/or service agreements (hereinafter collectively referred to as the "Agreements"), or any breach thereof, and/or the Vehicle, shall be resolved by binding arbitration administered by the Better Business Bureau ("BBB"), in accordance with (1) BBB's Commercial Arbitration Rules; (2) the Federal Arbitration Act, 9 U.S.C. § 1 *et. seq.* (1947, as amended); and (3) the terms and conditions set forth in this agreement, and, judgment on any award rendered by the Arbitrator(s) may be entered in any court having jurisdiction thereof.

¶6.    In Sawyers's response, she argued that the arbitration agreement was one-sided and thus substantively unconscionable.[3] American filed an answer asserting all rights concerning the arbitrability of Sawyers's claims; later, it filed a joinder in Herrin-Gear's motion to compel arbitration. American argued that, although it was a nonsignatory to the arbitration agreement, Sawyers's claims against American were so intimately intertwined with her transaction with Herrin-Gear that Sawyers was equitably estopped from refusing to arbitrate her claims against American, or, alternatively, that American was in a position to compel arbitration as Herrin-Gear's agent for administering the GAP waiver.

¶7.    In a supplemental response, Sawyers argued that the GAP waiver was an insurance policy subject to regulation by the Mississippi Department of Insurance. Sawyers argued that

---

[3]As the trial court duly noted and as revealed by the record, "Plaintiff does not allege that the Arbitration Agreement was procedurally unconscionable."

4

the arbitration agreement was unenforceable because it did not comply with the requirements of the Mississippi Department of Insurance for arbitration agreements in insurance policies. At a hearing on the motion to compel arbitration on July 22, 2008, American maintained that the GAP waiver was not insurance, and proffered an April 17, 2000, bulletin from the Mississippi Department of Insurance stating that the department had not determined that a GAP waiver product is insurance.

¶8.     On July 30, 2008, the Wayne County Circuit Court entered its Memorandum Opinion and Order Granting Defendant's Motion to Compel Arbitration. The trial court determined that, since interstate wires were used in completing the transaction at issue, Sawyer's claims involved interstate commerce within the meaning of the FAA. The trial court also rejected Sawyers's argument that the arbitration agreement was substantively unconscionable, and it opined that the GAP waiver was not an insurance policy. The trial court further determined that American, although a nonsignatory, could compel arbitration because American was acting as Herrin-Gear's agent for administering GAP claims, and because each of Sawyers's claims against American presumed the existence of her contracts with Herrin-Gear. The trial court did not dismiss the complaint, nor did it grant a stay pending arbitration.

¶9.     Aggrieved by the trial court's ruling, Sawyers filed a petition for interlocutory appeal, which this Court granted.

**DISCUSSION**

¶10.    Sawyers presents five issues for this Court's consideration: (1) whether the arbitration agreement between Sawyers and Herrin-Gear is unenforceable because it is substantively

5

unconscionable; (2) whether the arbitration agreement between Sawyers and Herrin-Gear cannot be enforced because its general purpose is to aid and protect Herrin-Gear and American's illegal enterprise of selling and administering unregistered insurance products; (3) whether the arbitration agreement between Sawyers and Herrin-Gear does not apply to Sawyers's claims against American because the arbitration agreement clearly limits the parties who can enforce the arbitration agreement to Sawyers and Herrin-Gear; (4) whether Sawyers is equitably estopped from pursuing her claims against American, notwithstanding the arbitration agreement Sawyers entered with Herrin-Gear; and (5) whether Sawyers is precluded from pursuing her claims against American based on American's allegation that it is Herrin-Gear's agent. Also, Herrin-Gear and American contend that this Court lacks jurisdiction over this appeal pursuant to Section 16(b) of the Federal Arbitration Act (FAA). *See* 9 U.S.C. § 16 (2006). We also find it necessary to discuss this Court's appellate jurisdiction over orders granting motions to compel arbitration and to resolve any ambiguity that may appear in prior decisions of this Court on this issue. We combine and restate the issues before us for the sake of today's discussion.

**I. WHETHER THIS COURT HAS JURISDICTION TO CONSIDER THE MERITS OF THE TRIAL COURT'S ENTRY OF AN ORDER COMPELLING ARBITRATION.**

¶11. Section 16 of the FAA states:

(a) An appeal may be taken from–

(1) an order–

(A) refusing a stay of any action under section 3 of this title,

6

(B) denying a petition under section 4 of this title to order arbitration to proceed,

(C) denying an application under section 206 of this title to compel arbitration,

(D) confirming or denying confirmation of an award or partial award, or

(E) modifying, correcting, or vacating an award;

(2) an interlocutory order granting, continuing, or modifying an injunction against an arbitration that is subject to this title; or

(3) a final decision with respect to an arbitration that is subject to this title.

(b) Except as otherwise provided in section 1292(b) of title 28, an appeal may not be taken from an interlocutory order–

(1) granting a stay of any action under section 3 of this title;

(2) directing arbitration to proceed under section 4 of this title;

(3) compelling arbitration under section 206 of this title; or

(4) refusing to enjoin an arbitration that is subject to this title.

9 U.S.C. § 16 (2006). Herrin-Gear and American argue that the trial court's order was not final, and that this Court, in *Banks v. City Finance Co.*, 825 So. 2d 642 (Miss. 2002), found the appellate courts do not have jurisdiction to entertain appeals of interlocutory orders granting motions to compel arbitration. On the other hand, when a trial court order disposes of an entire case on the merits, that order is final, and thus appealable.

¶12.    Over the past few years, the procedural vehicles used by aggrieved parties to travel to this Court for review of a trial court's order granting or denying arbitration have varied.

7

Notwithstanding our decision in **Banks**, in subsequent cases, we have reviewed and considered the issue of arbitration from parties who were aggrieved by the trial court's entry of an order granting a motion to compel arbitration. *See **Smith v. Captain D's, LLC***, 963 So. 2d 1116, 1118-19 (Miss. 2007) (interlocutory appeal from trial court's entry of order granting motion to compel arbitration and entry of final judgment of dismissal pursuant to Mississippi Rule of Civil Procedure Rule 54(b), which this Court found should be treated as timely-filed notice of appeal from final judgment; jurisdiction not raised); ***In Re Tyco Int'l (US), Inc.***, 917 So. 2d 773, 776 (Miss. 2005) (direct appeal from trial-court order granting motion to compel arbitration and denying Mississippi Rule of Civil Procedure 54(b) certification; jurisdiction not raised); ***Sullivan v. Protex Weatherproofing, Inc.***, 913 So. 2d 256, 257 (Miss. 2005) (direct appeal from trial-court order granting motion to compel arbitration; jurisdiction not raised); ***Sullivan v. Mounger***, 882 So. 2d 129, 131 (Miss. 2004) (grant of interlocutory appeal from trial-court order granting motion to compel arbitration); ***Russell v. Performance Toyota, Inc.,*** 826 So. 2d 719, 721 (Miss. 2002) (direct appeal from trial-court order granting motion to compel arbitration; jurisdiction not raised).

¶13.    On the other hand, we eventually simplified the process for parties aggrieved by a trial court's denial of a motion to compel arbitration. In a case which was not before the Court by way of an interlocutory appeal or a judgment certified pursuant to Mississippi Rule of Civil Procedure 54(b), we held that a direct appeal may be taken from a trial-court order denying a motion to compel arbitration. ***Tupelo Auto Sales v. Scott***, 844 So. 2d 1167, 1169-70 (Miss. 2003).

8

¶14.     A review of these cases causes us to conclude that this Court has an inconsistent procedural history in reviewing our trial courts' actions in granting or denying motions to compel arbitration. We thus wish to establish via today's case but one procedure for this Court's review of a trial court's grant or denial of a motion to compel arbitration, and that one procedure shall be via a direct appeal pursuant to the provisions of Mississippi Rules of Appellate Procedure 3 & 4.

¶15.     Although Section 16(b) of the FAA states that "an appeal may not be taken from an interlocutory order directing arbitration to proceed under section 4 of this title" or "compelling arbitration under section 206 of this title," Section 16(a)(3) states that "[a]n appeal may be taken from a final decision with respect to an arbitration that is subject to this title." 9 U.S.C. 16(a)(3) (2006). More than fifty years ago, this Court held that a decree forcing arbitration "partook of the nature of a final decree, since once arbitration was accomplished, all of the relief prayed for by appellees would have been granted." *Mach. Prods. Co. v. Prairie Local Lodge No. 1538 of Int'l Ass'n*, 230 Miss. 809, 94 So. 2d 344, 346 (1957) (overruled on other grounds). Although this Court went on to hold that arbitration could not be binding, we nonetheless voiced a vital sentiment. When binding arbitration is compelled, there is nothing left for the court to do but enforce the award. It is inconsequential whether an appeal is titled as interlocutory when the court only has to supervise compliance with an arbitration order or enforce an arbitration award. It is on this issue that this Court now overrules *Banks* and any other prior decisions of this Court to the extent they hold otherwise.

9

¶16. In ***Green Tree Financial Corp.-Alabama v. Randolph***, 531 U.S. 79, 121 S. Ct. 513, 517, 148 L. Ed. 2d 373 (2000), the United States Supreme Court addressed "whether an order compelling arbitration and dismissing a party's underlying claims is a 'final decision with respect to an arbitration' within the meaning of § 16(a)(3)." The Court stated:

> Section 16(a)(3), however, preserves immediate appeal of any "final decision with respect to an arbitration," regardless of whether the decision is favorable or hostile to arbitration. And as petitioners and respondent agree, the term "final decision" has a well-developed and longstanding meaning. It is a decision that "'ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment.'" ***Digital Equipment Corp. v. Desktop Direct, Inc.,*** 511 U.S. 863, 867, 114 S. Ct. 1992, 128 L. Ed. 2d 842 (1994), and ***Coopers & Lybrand v. Livesay,*** 437 U.S. 463, 467, 98 S. Ct. 2454, 57 L. Ed. 2d 351 (1978) (both quoting ***Catlin v. United States,*** 324 U.S. 229, 233, 65 S. Ct. 631, 89 L. Ed. 911 (1945)). See also ***St. Louis, I.M. & S.R. Co. v. Southern Express Co.,*** 108 U.S. 24, 28-29, 2 S. Ct. 6, 27 L. Ed. 638 (1883). Because the FAA does not define "a final decision with respect to an arbitration" or otherwise suggest that the ordinary meaning of "final decision" should not apply, we accord the term its well-established meaning. See ***Evans v. United States,*** 504 U.S. 255, 259-260, 112 S. Ct. 1881, 119 L. Ed. 2d 57 (1992).

*Id*. at 519. The Court concluded "that where, as here, the District Court has ordered the parties to proceed to arbitration, and dismissed all the claims before it, that decision is 'final' within the meaning of § 16(a)(3), and therefore appealable." *Id*. at 521. Further, "[t]he FAA does permit parties to arbitration agreements to bring a separate proceeding in a district court to enter judgment on an arbitration award once it is made (or to vacate or modify it), but the existence of that remedy does not vitiate the finality of the District Court's resolution of the claims in the instant proceeding." *Id*. at 520 (citing 9 U.S.C. §§ 9, 10, 11).

10

¶17. In ***Banks***, we held that ***Green Tree*** was distinguishable from the case then before us. Looking now at ***Banks*** in the rear-view mirror with more than seven years of experience by this Court in addressing numerous arbitration issues, we today conclude that we were simply wrong in ***Banks*** and that ***Green Tree*** is not distinguishable from ***Banks***, nor is ***Green Tree*** distinguishable from today's case. In ***Banks***, this Court attempted to distinguish ***Green Tree*** based on the fact that "in ***Green Tree***, the Plaintiffs' claims were dismissed with prejudice, thus ending the suit in the district court," whereas in ***Banks***, "the order which compelled arbitration did not dismiss the claims nor end the lawsuit." ***Banks***, 825 So. 2d at 646. Quite frankly, this conclusion in ***Banks*** failed to recognize the crux of the ***Green Tree*** decision: "Because the FAA does not define "a final decision with respect to an arbitration" or otherwise suggest that the ordinary meaning of "final decision" should not apply, we accord the term its well-established meaning." ***Green Tree***, 121 S. Ct. at 519 (citation omitted).

¶18. The Fifth Circuit Court of Appeals has reiterated the well-established meaning of "final decision," stating that it is "one that 'ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment.'" ***Am. Heritage Life Ins. Co. v. Orr***, 294 F.3d 702, 707 (5th Cir. 2002) (quoting ***Green Tree***, 121 S. Ct at 519) (citations omitted). The Fifth Circuit was faced with an argument similar to the one before us today; the appellees in ***Orr*** argued "that because the district court's order compelled arbitration and 'closed' the case instead of compelling arbitration and 'dismissing' the case, this court lacks jurisdiction to hear the appeal of the ruling of the district court." ***Id***. The Court determined that "[b]y distinguishing the terms 'dismiss' and 'close' as they apply to disposition of a case,

11

Appellees attempt to thwart the Court's instruction in **Green Tree** to apply the well-established meaning of 'final decision,'" and "[t]here is no practical distinction . . . . [t]he application of each word results in a termination on the merits, leaving the judgment-rendering court with nothing more to do but execute the judgment." **Id**. at 707-08. In today's case, regardless of the fact that we are neither faced with a stay nor a dismissal, the trial court has nothing left to do but supervise compliance with an order for arbitration or enforce an arbitration award. **Orr**, 294 F.3d at 715. *See also* **Banks**, 825 So. 2d at 650 (Diaz, J., dissenting). Thus, "[t]here is nothing interlocutory about an order compelling arbitration that does all the court has to do." **Id**. at 714 (citations omitted).

¶19.    In an effort to provide uniformity and judicial economy, this Court holds today that an order compelling arbitration which disposes of all the issues before the trial court or orders the entire controversy to be arbitrated is a final decision, and therefore, immediately appealable. Further, any final decision with respect to arbitration is appealable to this Court pursuant to Mississippi Rules of Appellate Procedure 3 and 4. *See* M.R.A.P. 3, 4. As stated by our learned colleagues from the Supreme Court of New Jersey,

> When the parties are ordered to arbitration, the right to appeal should not turn on whether a trial court decides to stay the action or decides to dismiss the action. Rather, the same result should apply in either case. In that way the parties will know with relative certainty that the order is appealable as of right.

**Wein v. Morris**, 194 N.J. 364, 379, 944 A. 2d 642, 650 (2008). The trial court order in today's case compelled arbitration of the entire controversy as to all parties. As such, we find that this Court has appellate jurisdiction over the present matter pursuant to Section

12

16(a)(3) of the FAA. *See* 9 U.S.C. § 16(a)(3) (2006). To the extent that *Banks* and its progeny are in conflict with today's decision, those cases are overruled.

## II. WHETHER THE ARBITRATION AGREEMENT IS SUBSTANTIVELY UNCONSCIONABLE.

¶20. This Court reviews the grant or denial of a motion to compel arbitration de novo. *East Ford, Inc. v. Taylor*, 826 So. 2d 709, 713 (Miss. 2002). "The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983). Consistent with the position taken by the United States Supreme Court's interpretation of the FAA, this Court has followed the federal policy favoring arbitration. *See East Ford*, 826 So. 2d at 713; *IP Timberlands Operating Co. v. Denmiss Corp.*, 726 So. 2d 96, 103-04 (Miss. 1998).

¶21. Sawyers argues that the trial court erred in enforcing the arbitration agreement because it is substantively unconscionable. In *Covenant Health & Rehabilitation of Picayune, LP v. Estate of Moulds ex rel. Braddock*, this Court stated:

> Under "substantive unconscionability, we look within the four corners of an agreement in order to discover any abuses relating to the specific terms which violate the expectations of, or cause gross disparity between, the contracting parties." *Stephens*, 911 So. 2d at 521. Substantive unconscionability is proven by oppressive contract terms such that 'there is a one-sided agreement whereby one party is deprived of all the benefits of the agreement or left without a remedy for another party's nonperformance or breach . . . .' *Holyfield*, 476 F. Supp. at 110.

13

. . .

Our courts may remedy unconscionable agreements as follows:

"The law of Mississippi imposes an obligation of good faith and fundamental fairness in the performance of every contract . . . this requirement is so pronounced that courts have the power to refuse to enforce any contract . . . in order to avoid an unconscionable result." Section 75-2-302 of the Mississippi Code provides: "If the court as a matter of law finds the contract to have been unconscionable . . . [it] may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result."

*Covenant*, 14 So. 3d 695, 699-700. Unconscionability has been defined also as "'an absence of meaningful choice on the part of one of the parties, together with contract terms which are unreasonably favorable to the other party.'" *Entergy Miss., Inc. v. Burdette Gin Co.*, 726 So. 2d 1202, 1207 (Miss. 1998). More specifically, Sawyers contends that the arbitration agreement provides an avenue for Herrin-Gear to pursue its claims in a court of law, while requiring Sawyers to arbitrate all claims; the arbitration agreement requires the arbitration be held in the city where Herrin-Gear is located; the arbitrator cannot award Sawyers damages for attorney's fees, lost wages, mental anguish, costs, interest, or punitive damages; and Sawyers is required to give up her right to a judge and jury, while Herrin-Gear is not.

¶22. The arbitration agreement does permit Herrin-Gear to bring an action for possession and/or replevin of the vehicle purchased by Sawyers in a court of law rather than resolving the matter by binding arbitration. However, mutuality of obligation is not required for a contract to be enforceable. *Murphy v. AmSouth Bank*, 269 F. Supp. 2d 749, 752 (S.D. Miss. 2003). *See also McKenzie Check Advance of Miss., LLC v. Hardy*, 866 So. 2d 446, 453

14

(Miss. 2004) ("[p]ursuant to Mississippi law, mutuality of obligation is not required for an arbitration agreement to be enforceable. . ."). Also, as discussed by the trial court, "[i]t is common for such provisions to be contained in an arbitration agreement where there is collateral or a security interest at stake, because an arbitrator would not have authority to grant certain relief that only courts could give." As such, the provision whereby a limited exception to arbitration is given only to Herrin-Gear to obtain possession of the subject vehicle by replevin in the event of Sawyer's default under the terms of the sales contract does not render the arbitration agreement substantively unconscionable.

¶23. Further, Sawyers's contention that the arbitration agreement requires her to give up the right to a judge and jury while Herrin-Gear is not subject to the same requirement is without merit. The arbitration agreement states that "any controversy or claim between Buyer(s)/Lessee(s) and Dealer . . . shall be resolved by binding arbitration." The only very limited exception is the one discussed *supra*, concerning the right of replevin on the part of Herrin-Gear. The fact that there is also a clause stating, "Buyer(s)/Lessee(s) acknowledge and agree that by agreeing to arbitrate as set forth herein, Buyer(s)/Lessee(s) give up the right to go to court and the right to a jury trial," does not make the agreement one-sided. The clause merely reinforces the previous notion of binding arbitration and thus emphasizes the point that the buyer(s)/lessee(s) understand the rights that they are relinquishing. A party such as Herrin-Gear already would be aware of the relinquishment of these rights, since it obviously was responsible for drafting the document containing the arbitration agreement. Sawyers also asserts that the arbitration agreement is substantively unconscionable in that

15

it requires that "[a]ny Arbitration proceeding shall be conducted in the city where Dealer's dealership is located." This Court agrees with the trial court's analysis here:

> Since Plaintiff purchased the automobile in Jackson, it is not unreasonable that she would expect to have to bring a lawsuit regarding that automobile in Jackson. Moreover, the Plaintiff has not provided any evidence of any kind of hardship that would be caused if she were required to arbitrate in Jackson. The Court finds that Plaintiff has not established that this provision is unfair.

Certainly, if Sawyers was able to make the journey to Jackson to purchase her vehicle, the arbitration agreement is not one-sided as to deprive Sawyers of all its benefits simply because she has to drive approximately 150 miles from Waynesboro to Jackson.

¶24. Lastly, Sawyers argues that the arbitration agreement maintains that the arbitrator cannot award Sawyers damages for attorney's fees, lost wages, mental anguish, costs, interest or punitive damages. The trial court determined that "the parties have not agreed to limit any remedies that could be awarded in arbitration," and "there is no limitation on remedies that can be awarded by the arbitrator under the applicable [Better Business Bureau] Rules." The Arbitration Agreement does state that "[t]o the extent permitted by law, the Arbitrator(s) shall have no authority to award punitive damages or other damages not measured by the prevailing party's actual damages . . . ." Like the trial court, we do not interpret this clause as an agreement by the parties to limit any of the *remedies* which might be awarded in arbitration. Even so, the parties may be limited as to the *amount* of punitive damages which might be awarded, since such an award would have to be "measured by the prevailing party's actual damages," but such limitation is by no means unreasonable. Additionally, this clause certainly does not dispose of Sawyers's right to any compensatory or actual damages.

16

¶25. Our analysis is supported by the Supreme Court of the United States, which has held that on the issue of punitive damages, "[t]he precise [punitive damages] award in any case, of course, must be based upon the facts and circumstances of the defendant's conduct and the harm to the plaintiff," and there must be efforts to "ensure that the measure of punishment is both reasonable and proportionate to the amount of harm to the plaintiff and to the general damages recovered." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425-26, 123 S. Ct. 1513, 1524, 155 L. Ed. 2d 585 (2003). The *Campbell* Court likewise stated that "each [punitive damages] award must comport with the principles set forth in *Gore*." *Campbell*, 538 U.S. at 427, 123 S. Ct. at 1525 (citing *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 116 S. Ct. 1589, 134 L. Ed. 2d 809 (1996)). We thus find our analysis on this issue is not inconsistent with the United States Supreme Court's analysis in *Campbell*.

¶26. Sawyers cites *Pitts v. Watkins*, 905 So. 2d 553, 557 (Miss. 2005) (home purchasers sued home inspector alleging breach of duty, misrepresentation, breach of contract, gross negligence, and negligence) for the proposition that a limitation-of-liability clause which leaves a party with no adequate remedy is substantively unconscionable. While this proposition undoubtedly is true, today's case is easily distinguishable from *Pitts*, inasmuch as Sawyers is left with the ability to seek any "damages measured by the prevailing party's actual damages." In *Pitts*, liability was limited to $265, the amount paid for the home inspection at issue, and no recovery was available for consequential damages. *Id*. at 556. This is certainly not the situation before the Court today, and in this respect, *Pitts* is inapplicable.

¶27. The arbitration agreement at issue is not so one-sided that Sawyers is deprived of all the benefits of the agreement or left without a remedy for Herrin-Gear's nonperformance or breach. Thus, for the reasons stated, the trial court did not commit error in finding that the arbitration agreement was not substantially unconscionable. Accordingly, this issue has no merit.

### III.   WHETHER HERRIN-GEAR AND AMERICAN ARE INVOLVED IN THE ILLEGAL ENTERPRISE OF SELLING AND ADMINISTERING UNREGISTERED INSURANCE.

¶28. Sawyers asserts that the arbitration agreement is "unenforceable because the principal purpose of the arbitration agreement is to directly furnish aid and protection to an illegal enterprise, namely, . . . American and Herrin's agreement to sell and administrate unregistered insurance," the GAP waiver. For this argument, Sawyers cites Mississippi Code Section 83-5-5, which defines "insurance company" and "contract of insurance." *See* Miss. Code Ann. § 83-5-5 (Rev. 1999). As stated by the trial court, based on those definitions, "one could certainly argue that the Agreement is in fact an insurance policy." However, the Mississippi Insurance Department stated in its April 17, 2000, Bulletin No. 2000-2:

> At this time, the Mississippi Insurance Department has not determined whether a gap waiver product that is sold to the consumer is insurance. We are taking this issue under advisement and may propose legislation requiring certain disclosures to protect the consumer in the next legislative session. Since the Mississippi Insurance Department is not currently taking the position that the gap waiver product sold by the lender, car dealership, third party administrator etc., to the consumer is insurance, the Mississippi Department of Banking and Consumer Finance will not regulate the amount that is charged to the borrower/consumer for the product under Miss. Code Ann. § 63-19-33 (Supp. 1999).

18

Nothing in the record indicates that since this Bulletin, the Mississippi Department of Insurance or the Legislature has made any ruling that GAP waiver products are insurance.

¶29.    Furthermore, this Court is of the firm opinion that this determination is best left to the Mississippi Insurance Department and the Mississippi Legislature. Thus, we find guidance in the language set forth in the Bulletin, dated April 17, 2000, that a GAP waiver product sold by the car dealership to the consumer is not insurance.  *See Miss. Power & Light Co. v. Cook*, 832 So. 2d 474, 480 (Miss. 2002) ("the doctrine of primary jurisdiction 'determines whether the court or the agency should make the initial decision'") (quoting *Campbell Sixty-Six Express, Inc. v. J. & G. Express, Inc.*, 244 Miss. 427, 141 So. 2d 720, 725 (1962)). Therefore, Sawyers's claims that Herrin-Gear and American are engaged in an illegal enterprise are without merit, and the other allegations asserted by Sawyers regarding these companies' potential insurance violations should be directed to the Commissioner of Insurance.[4]  *See* Miss. Code Ann. §§ 83-5-1 to 83-6-35 (Rev. 1999).

### IV.    WHETHER THE ARBITRATION AGREEMENT APPLIES TO SAWYERS'S CLAIMS AGAINST AMERICAN.

¶30.    Sawyers submits that the arbitration agreement applies only to claims between Sawyers and Herrin-Gear; that the trial court erred in finding that Sawyers is equitably estopped from pursuing her claims against American in court; and that the trial court erred in enforcing the arbitration agreement as to American based on its finding that American is

---

[4]Sawyers also argues that Herrin-Gear and American formed an insurance company holding system.

19

Herrin-Gear's agent. Sawyers and Herrin-Gear are the only parties who signed both the arbitration agreement and the GAP waiver; however, all of Sawyers's claims against American presume the existence of a contractual relationship between Sawyers and American. American asserts that it may compel arbitration as a nonsignatory to the arbitration agreement based on the doctrines of equitable estoppel and agency, and further, that nothing in the arbitration agreement specifically prevents a third party from participating in arbitration or enforcing the terms of the arbitration agreement.

¶31. Sawyers cites *Qualcomm, Inc. v. American Wireless License Group, LLC*, 980 So. 2d 261, 269 (Miss. 2007), in support of her contention that only the parties listed in the arbitration agreement have the ability to compel arbitration. However, Sawyers fails to consider that, in *Qualcomm,* the Court was "faced with the unique situation of non-signatories attempting to enforce an arbitration provision against other non-signatories." *Id*. The Court went on to state that "[t]here are exceptions to the general rule that non-signatories may not be bound, which our Court has repeatedly recognized. For instance, a non-signatory may be able to enforce an arbitration agreement against a signatory where the non-signatory has a close legal relationship with a signatory of the agreement." *Id*. (citing *B.C. Rogers Poultry, Inc. v. Wedgeworth*, 911 So. 2d 483, 491-92 (Miss. 2005)). In today's case, American was acting on Herrin-Gear's behalf in administering the GAP waiver. Sawyers entered into the GAP waiver with Herrin-Gear and had no agreement with American; however, it is apparent from the parties' actions that an agreement existed between Herrin Gear and American to the extent that American supervised payment to Sawyers under the

20

GAP waiver. Also, American was listed on the GAP waiver as the administrator. Herrin-Gear and American unquestionably maintained a close legal relationship.

¶32. In *Wedgeworth*, this Court stated:

[S]tate law principles might provide for the arbitration of disputes between a nonsignatory and a signatory to a contract, where there are allegations of substantially interdependent and concerted misconduct. A non-signatory should have standing to compel arbitration where the non-signatory has a close legal relationship, such as, alter ego, parent/subsidiary, or agency relationship, with a signatory to the agreement. *See Terminix Int'l, Inc. v. Rice*, 904 So. 2d 1051 (Miss. 2004) quoting *Washington Mut. Fin. Group, LLC v. Bailey*, 364 F.3d 260, 267 (5th Cir. 2004) ("A nonsignatory party may be bound to an arbitration agreement if so dictated by the ordinary principles of contract and agency."). *See also Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*, 10 F.3d 753, 757 (11th Cir. 1993); *J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315 (4th Cir. 1988); *Interocean Ship. Co. v. Nat'l Ship. & Trading Corp.*, 523 F.2d 527, 539 (2d Cir. 1975). However, a third party who is a non-signatory to a contract should not be able to enforce an arbitration agreement, under the intertwined claims test, where there is no alter ego, parent/subsidiary, agency, or other form of close legal relationship alleged, and where the "intertwined claims" do not depend on the agreement. . . . .

*Wedgeworth*, 911 So. 2d at 491-92.

¶33. As we have already discussed *supra*, Sawyers's allegations against Herrin-Gear and American involved "substantially interdependent and concerted misconduct" between Herrin-Gear (a signatory) and American (a nonsignatory), which maintained "a close legal relationship, such as, . . . [an] agency relationship." *Wedgeworth*, 911 So. 2d at 492.

¶34. Also, in *Fradella v. Seaberry*, 952 So. 2d 165, 175 (Miss. 2007), this Court held:

But for the real estate contract containing the arbitration clause at issue, the Seaberrys could not bring a claim of breach of contract. Because the Seaberrys rely on the document for their breach of contract claim, they cannot deny Fradella the benefit of the arbitration clause within the real estate contract that

21

she relied upon to delineate her duties and responsibilities with regard to the transaction.

*Id.* at 175. In today's case, Sawyers relied on her agreements with Herrin-Gear and the alleged representations of Herrin-Gear in filing suit against American. Because Sawyers relies on these agreements and alleged representations, she cannot deny American the benefit of the arbitration agreement which was an integral part of the transaction at issue. As such, arbitration of Sawyers's claims against American is appropriate.

¶35.   We do not come to this conclusion flippantly, acknowledging that the doctrine of equitable estoppel is indeed an extraordinary remedy which courts should invoke cautiously, only when necessary "'to prevent unconscionable results.'" *Wedgeworth*, 911 So. 2d at 491 (citing *Harrison Enters., Inc. v. Trilogy Commc'ns, Inc.*, 818 So. 2d 1088, 1095 (Miss. 2002)). With this premise in mind, we are constrained to find that this issue is without merit.

## CONCLUSION

¶36.   For the reasons stated, the Wayne County Circuit Court's Order Granting Defendant's Motion to Compel Arbitration is affirmed.

¶37.   **AFFIRMED**.

**WALLER, C.J., RANDOLPH, LAMAR AND PIERCE, JJ., CONCUR. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY GRAVES, P.J. CHANDLER, J., DISSENTS WITH SEPARATE WRITTEN OPINION. DICKINSON, J., NOT PARTICIPATING.**

**KITCHENS, JUSTICE, DISSENTING:**

¶38.   Although I agree that this Court has jurisdiction to review the trial court's order compelling arbitration, I disagree with the majority's conclusion that the arbitration

22

agreement is not unconscionable. Despite the majority's attempt to distinguish ***Pitts v. Watkins***, 905 So. 2d 553 (Miss. 2005), from the instant case, I find no significant difference in the two agreements. In ***Pitts***, this Court held that an arbitration agreement was unconscionable because it allowed one party to seek redress in a court of law but bound the other party to arbitration, limited the amount of damages that could be awarded, and prohibited punitive damages. ***Id.*** Because the arbitration agreement in this case contains the same terms, our precedent requires reversal.

¶39.     First, the majority finds that the agreement is not one-sided because Herrin-Gear's ability to pursue an action in a court of law is limited to the right of replevin.[5] However, in ***Pitts***, the defendant's right to pursue an action against the plaintiff in a court of law was likewise limited. The underlying dispute in ***Pitts*** involved a home inspection, and the contract between the home owners, the Pittses, and the inspector, Watkins, provided that "[a]ny dispute concerning the interpretation of this Agreement or arising from the Inspection and Report (*unless based on payment of fee*) shall be resolved by . . . arbitration." ***Id.*** at 556 (emphasis in original). According to this Court, such language "maintain[ed] Watkins's ability to pursue a breach by Pitts in a court of law, while Pitts [wa]s required to arbitrate any

---

[5]The majority also states that "mutuality of obligation is not required for a contract to be enforceable." Maj. Op. at ¶ 22 (citing ***Murphy v. AmSouth Bank***, 269 F. Supp. 2d 749, 752 (S.D. Miss. 2003). Yet, the opinion omits a vital portion of this rule. Our law holds that "mutuality of obligation is not required for an arbitration agreement to be enforceable *as long as there is consideration.*" ***McKenzie Check Advance of Miss., LLC v. Hardy***, 866 So. 2d 446, 453 (Miss. 2004) (emphasis added).

23

alleged breached by Watkins." Therefore, this Court held the arbitration clause to be "clearly one-sided, oppressive, and therefore, substantively unconscionable." *Id.*

¶40.   The language allowing Herrin-Gear to seek redress in a court of law for replevin is indistinguishable in principle from the language allowing Watkins to pursue a collection action in a court of law. As in the *Pitts* case, Herrin-Gear is the only party entitled to utilize a court of law to seek a remedy for a wrong that it might suffer.

¶41.   Second, like the agreement in *Pitts*, the arbitration agreement between Sawyers and Herrin-Gear clearly limits liability to actual damages: "the Arbitrator(s) shall have no authority to award punitive damages or other damages not measured by the prevailing party's actual damages." Curiously, and despite this clear language, the trial court found, and the majority agrees, that "the parties have not agreed to limit any remedies." Maj. Op. at ¶ 24. Moreover, although the agreement specifically prohibits punitive damages, the majority reasons that the parties are simply "limited as to the *amount* of punitive damages since such an award would have to be 'measured by the prevailing party's actual damages.'" Maj. Op. ¶ 24. With utmost respect, this analysis is not workable. Punitive damages are "damages awarded *in addition* to actual damages." *Black's Law Dictionary* 418 (8th ed. 1999) (emphasis added). If it is true, as the majority finds, that the agreement would allow Sawyers to recover anything beyond her actual damages, then it provides no method for calculating the amount of her recovery. If the amount is to be "measured by the prevailing party's actual damages," *how* is such a measurement to be accomplished? The agreement provides no

24

answer, so Sawyers is limited to recovering, at most, the $3,355.12 she claims that she is owed under the GAP waiver.[6]

¶42.    Thus, the majority's effort to distinguish *Pitts* on this issue fails.  In *Pitts* the plaintiffs were limited to recovering the cost of inspection and explicitly were barred from recovering consequential or punitive damages.  *Id.* at 556.  Although Sawyers can recover more than the $265 inspection fee in *Pitts*, she still is limited to a few thousand dollars and is precluded from obtaining any amount of consequential or punitive damages.  Without the ability to recover even the costs of proving her case (i.e., attorney fees, costs, expert fees, interest, etc.), the agreement is wholly inequitable.  As this Court has recognized, "[c]lauses that limit liability are given strict scrutiny by this Court and are not to be enforced unless the limitation is fairly and honestly negotiated and understood by both parties."  *Id.* (quoting *Royer Homes of Miss., Inc. v. Chandeleur Homes, Inc.*, 857 So. 2d 748, 754 (Miss. 2003)).[7]

---

[6]Although the majority cites *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408, 123 S. Ct. 1513, 155 L. Ed. 2d 585 (2003), that opinion provides no assistance.  Indeed, in *Campbell*, the United States Supreme Court refused to recognize any methodology for determining punitive damages.  *Id.* at 424-25 ("We have consistently rejected the notion that the constitutional line is marked by a simple mathematical formula, even one that compares actual and potential damages to the punitive award.") (quoting *BMW of N. Am., Inc. v. Gore*, 517 U.S. 599, 116 S. Ct. 1589, 134 L. Ed. 2d 809 (1996)).  Thus, *Campbell* offers no formula by which punitive damages could be calculated, if they were not prohibited.

[7]The *Pitts* opinion also pointed out that the arbitration agreement attempted to reduce the statutory three-year statute of limitations to one year, but this clause was simply "further evidence" of the contract's unconscionability.  *Pitts*, 905 So. 2d at 558.

25

¶43. The same terms that rendered the ***Pitts*** arbitration agreement unconscionable are before us in the instant case. Because there is no legally significant distinction between the two contracts, the terms of Herrin-Gear's arbitration agreement are unconscionable and unenforceable. For these reasons, I respectfully dissent.

**GRAVES, P.J., JOINS THIS OPINION**.

**CHANDLER, JUSTICE, DISSENTING:**

¶44. Today Mississippi departs from the rule embraced by the majority of states, which holds that an order that merely compels a dispute to arbitration is not a final, appealable judgment. ***Chem-Ash, Inc. v. Ark. Power & Light Co.***, 751 S.W. 2d 353, 354-55 (Ark. 1988); ***Ruesga v. Kindred Nursing Ctrs., LLC***, 161 P. 3d 1253, 1257 (Ariz. Ct. App. 2007); ***Parada v. Superior Court***, 98 Cal. Rptr. 3d 743, 753 (Cal. App. 4th Dist. 2009); ***Ferla v. Infinity Dev. Assocs., Inc.***, 107 P. 3d 1006, 1008 (Colo. Ct. App. 2004); ***Evans v. Dreyfuss Bros., Inc.***, 971 A. 2d 179, 186 (D.C. 2009); ***Goshayeshi v. Mehrabian***, 501 S.E. 2d 265, 266 (Ga. Ct. App. 1998); ***Dan Wiebold Ford, Inc. v. Universal Computer Consulting Holding, Inc.***, 127 P. 3d 138, 141 (Idaho 2005); ***National Educ. Assoc.-Topeka v. Unified Sch. Dist. No. 501***, 925 P.2d 835, 844 (Kan. 1996); ***Fayette County Farm Bureau Fed'n v. Martin***, 758 S.W. 2d 713, 714 (Ky. Ct. App. 1988); ***Collins v. Prudential Ins. Co. of America***, 752 So. 2d 825, 829 (La. 2000); ***Creamer v. Bishop,*** 902 A. 2d 838, 839 (Me. 2006); ***Commonwealth v. Phillip Morris Inc.***, 864 N.E. 2d 505, 511 n.9 (Mass. 2007); ***Miyoi v. Gold Bond Stamp Co. Employees Ret. Trust***, 196 N.W. 2d 309, 310 (Minn. 1972); ***State***

26

*ex rel. Bruning v. R.J. Reynolds Tobacco Co.*, 746 N.W. 2d 672, 678 (Neb. 2008); *State ex rel. Masto v. Second Judicial Dist. Court ex rel. County of Washoe*, 199 P.3d 828, 832 (Nev. 2009); *N.C. Elec. Membership Corp. v. Duke Power Co.*, 381 S.E. 2d 896, 899 (N.C. Ct. App. 1989); *Superpumper, Inc. v. Nerland Oil, Inc.*, 582 N.W. 2d 647, 652 (N.D. 1998); *Ass'n of Unit Owners of Bridgeview Condos v. Dunning*, 69 P.3d 788, 801 (Or. 2003); *Schantz v. Dodgeland*, 830 A.2d 1265, 1266 (Pa. Super. 2003); *Widener v. Fort Mill Ford*, 674 S.E. 2d 172, 173-74 (S.C. Ct. App. 2009); *Dakota Wesleyan Univ. v. HPG Int'l, Inc.*, 560 N.W. 2d 921, 923-24 (S.D. 1997); *T.R. Mills Contractors, Inc. v. WRH Enters., LLC*, 93 S.W. 3d 861, 865 (Tenn. Ct. App. 2002); *In re Gulf Exploration, LLC*, 289 S.W. 3d 836, 839 (Tex. 2009); *Powell v. Cannon*, 179 P.3d 799, 805 (Utah 2008); *Seguin v. Northrop Grumman Sys. Corp.*, 672 S.E. 2d 877, 879 (Va. 2009); *Herzog v. Foster & Marshall, Inc.*, 783 P.2d 1124, 1129 (Wash. Ct. App. 1989); *McGraw v. American Tobacco Co.*, 681 S.E. 2d 96, 106 (W. Va. 2009).

¶45.  The Federal Arbitration Act (FAA) permits appeals from final orders that compel arbitration, but it does not permit appeals from interlocutory orders that compel arbitration. 9 U.S.C. § 16(a)(3), (b) (2006).  In *Banks v. City Finance Co.*, 825 So. 2d 642, 647-48 (Miss. 2002), this Court held that, in accordance with federal precedent, an order that compels arbitration is not a final, appealable judgment unless the trial court also dismisses the claims before the court.  In *Banks*, the trial court had entered an order compelling all of the plaintiffs' claims to arbitration.  *Id.* at 644.  The plaintiffs filed a timely notice of appeal

27

pursuant to Mississippi Rule of Appellate Procedure 4(a). *Id.* After examining the United States Supreme Court case of ***Green Tree Financial Corp.-Ala. v. Randolph***, 531 U.S. 79, 121 S. Ct. 513, 148 L. Ed. 2d 373 (2000), this Court determined that the order at issue was interlocutory. *Id.* at 648.

¶46. In ***Green Tree***, the district court had granted the motion to compel arbitration, denied all other motions, and dismissed the plaintiffs' claims with prejudice. *Id.* at 83. On certiorari, the petitioners argued that Section 16(b) prohibited an appeal of the order because the order compelled arbitration. *Id.* at 86. The Supreme Court observed that an order compelling arbitration may be appealed under Section 16(a)(3) if the order is "a final decision with respect to an arbitration." *Id.* The Supreme Court determined that, because the FAA does not define "a final decision with respect to an arbitration," the term "final decision" would be given its well-established meaning of "a decision that ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment." *Id.*

¶47. Applying this standard, the Supreme Court held that the order compelling arbitration was a final, appealable order because it directed that all claims be resolved by arbitration, and it dismissed all claims with prejudice, leaving the court with nothing to do but execute the judgment. *Id.* The Supreme Court concluded that, when a district court compels arbitration and dismisses the claims before it, the decision is final and, therefore, appealable under Section 16(a)(3). *Id.* at 89. Conversely, an order that compels arbitration and stays the

litigation "would not be appealable" under Section 16 because such an order is not "a final decision with respect to an arbitration."[8] *Id.* at 87 n.2 (citing 9 U.S.C. § 16(b)(1)).

¶48.    After reviewing *Green Tree*, this Court in *Banks* held that the order before the Court was not final because the order did not dismiss the action on the merits nor end the lawsuit. *Banks*, 825 So. 2d at 646.  Rather, the order "simply compelled arbitration." *Id.* at 647.  Therefore, the Court held that the order was interlocutory. *Id.* at 648.  This holding comported with *Green Tree*'s statement that, for the purposes of appealablity under Section 16(a)(3), a final decision is one that "ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment." *Green Tree*, 531 U.S. at 86.  Unlike a "final decision," an order that merely compels arbitration and does not dismiss the underlying lawsuit contemplates further action by the trial court, which retains jurisdiction to supervise compliance with the arbitration order and to enter an order confirming the arbitration award. Therefore, the order that compelled arbitration in this case, like the order that compelled arbitration in *Banks*, was interlocutory and clearly distinguishable from the final order that compelled arbitration and dismissed the action in *Green Tree*.

¶49.    The Fifth Circuit adheres to the same view this Court espoused in *Banks*, which is that an order that compels arbitration, but does not dismiss the underlying proceedings, is not an appealable order. *CitiFinancial Corp. v. Harrison*, 453 F.3d 245, 250 (5th Cir. 2006).  In

---

[8] For the purposes of this analysis, I draw no distinction between an order that merely compels arbitration, and an order that compels arbitration and also stays the litigation; both of these orders have the practical effect of delaying the litigation while the case proceeds to arbitration. *See McCowan v. Dean Witter Reynolds*, 889 F.2d 451, 453 (2d Cir. 1989).

*Harrison*, the district court compelled arbitration, stayed the litigation, and administratively dismissed the case, with the provision that any remaining party could move to reopen the case if further judicial intervention was necessary. *Id.* The Fifth Circuit's analysis of whether the order constituted a "final decision" under Section 16(a)(3) of the FAA focused upon whether the order was the functional equivalent of a dismissal under *Green Tree*. *Id.* at 250-51. The court stated that, when a case is "dismissed," it is "removed from the docket, terminated indefinitely, and restarted only upon the filing of a new complaint." *Id* at 251. In contrast to a "dismissed" case, an "administratively dismissed" or "administratively closed" case may be reopened; thus, it remains on the "inactive docket" of the district court and equates to a stay, prohibiting appellate review. *Id.* The court distinguished *American Heritage Life Insurance Co. v. Orr*, 294 F.3d 702 (5th Cir. 2002). *Id.* at 251 n.11. In *Orr*, the court had held that a district court order stating that a case was "closed," as opposed to "administratively closed," was the functional equivalent of a dismissal, and thus was a "final decision" under Section 16(a)(3) of the FAA. *Orr*, 294 F.3d at 707-08. Thus, in *Harrison* and *Orr*, the Fifth Circuit determined the question of finality by considering whether the district court's disposition was the functional equivalent of a dismissal under *Green Tree*. This is the same analysis this Court employed in *Banks* and rejects today.

¶50.    This Court now deems an order that merely compels a dispute to arbitration to be a "final decision" that ends the litigation on the merits and leaves the trial court with nothing to do but execute the judgment. The Court so holds despite the fact that, under such an order, the trial court retains jurisdiction to supervise compliance with the order and to enforce an

30

arbitration award. I disagree with the Court's holding because it seems clear that, when the trial court has entered an order compelling arbitration, "the litigation has not ended. Rather, it has moved to another forum with the expectation that it will return to the [district court] for entry of a final judgment." *Corion v. Chen*, 964 F.2d 55 (1st Cir. 1992) (quoting *De Fuertes v. Drexel, Burnham, Lambert, Inc.*, 855 F.2d 10, 11 (1st Cir. 1988)). Viewed in this manner, an order compelling arbitration is analogous to other interlocutory orders which contemplate further proceedings, such as an order for a new trial, an order denying summary judgment, or an order remanding a case to an administrative agency for development of the record. *See Nat'l Educ. Assoc.-Topeka*, 925 P.2d at 838-39.

¶51.    This Court has stated that "Congress' clear intent, in the Arbitration Act, [was] to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *In re Tyco Int'l (U.S.), Inc.*, 917 So. 2d 773, 782 (Miss. 2005) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927, 941, 74 L. Ed. 2d 765 (1983)). The Congressional policy underlying the FAA's rule against appeals from interlocutory orders compelling arbitration is that "appeal rules should reflect a strong policy favoring arbitration." *Stedor Enter., Ltd. v. Armtex, Inc.*, 947 F.2d 727, 730 (4th Cir. 1991) (quoting 15 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3914.34 (Supp. 1990)). Consequently, "Congress sought to prevent parties from frustrating arbitration through lengthy preliminary appeals." *Id.* "[A] rule regarding every order compelling arbitration as 'final' and appealable would completely undermine Congress's

31

effort to thwart appeals of such orders." ***Turboff v. Merrill Lynch, Pierce, Fenner & Smith, Inc.***, 867 F.2d 1518, 1520 (5th Cir. 1989).

¶52.    In addition to the strong Congressional policy underlying the FAA's prohibition of appeals from interlocutory orders compelling arbitration, several other considerations mitigate against the Court's decision to treat orders compelling arbitration as final judgments. The treatment of these orders as final encourages undesirable piecemeal appeals by allowing an appeal from an order compelling arbitration, followed by a second appeal from any subsequent arbitration award. *See **Colom Law Firm, LLC v. Board of Trustees***, 16 So. 3d 692, 695 n.4 (Miss. 2009) ("We take this opportunity to point out that fractured, bifurcated, or piecemeal appeals are not preferred by this Court."). Moreover, permitting an appeal from an order that compels arbitration will tax the resources of the litigants and the judiciary, while the arbitration might have determined all issues to the parties' satisfaction and obviated an appeal.    Fundamentally, a rule that delays court-ordered arbitration with a lengthy appellate process frustrates the purpose of arbitration, which is to provide a forum for speedy and efficient dispute resolution.

¶53.    This Court has determined that, when applicable, the FAA governs appellate review of arbitration orders.  ***Tupelo Auto Sales v. Scott***, 844 So. 2d 1167, 1170 (Miss. 2003). Under Section 16(b) of the FAA, an interlocutory appeal may not be had from an order compelling arbitration. 9 U.S.C. § 16(b) (2006). I would reaffirm the rule this Court adopted in ***Banks***, which holds that an order that compels arbitration and neither dismisses the claims nor ends the litigation is interlocutory. ***Banks***, 825 So. 2d at 647-48. I would find the instant

32

appeal to be interlocutory, dismiss it, and await any appeal from a final judgment entered after the arbitration has concluded.