# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-CA-01158-COA

**BRIOVARX, LLC, IMPROPERLY NAMED AS**        **APPELLANTS**
**MEDFUSION RX ASCEND PHARMACY, AND**
**CATAMARAN CORPORATION F/K/A**
**CATALYST RX**

**v.**

**TRANSCRIPT PHARMACY, INC.**        **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 07/08/2013 |
| TRIAL JUDGE: | HON. WINSTON L. KIDD |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | ALAN M. PURDIE |
| | DION JEFFERY SHANLEY |
| | ROBERT RICHARDSON BAUGH |
| | MICHAEL W. ULMER |
| | HUGH RUSTON COMLEY |
| | JAIME C. ERDBERG |
| ATTORNEYS FOR APPELLEE: | CECIL MAISON HEIDELBERG |
| | CHARLES STEPHEN STACK JR. |
| NATURE OF THE CASE: | CIVIL - TORTS - OTHER THAN PERSONAL INJURY AND PROPERTY DAMAGE |
| TRIAL COURT DISPOSITION: | MOTION TO COMPEL ARBITRATION DENIED |
| DISPOSITION: | REVERSED AND REMANDED - 05/05/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., BARNES AND MAXWELL, JJ.**

**MAXWELL, J., FOR THE COURT:**

¶1.    The circuit court denied BriovaRX's motion to compel arbitration because BriovaRX

was not a party to the arbitration agreement it sought to enforce.  But in Mississippi, a non-

signatory *can* enforce an arbitration agreement when the non-signatory maintained a close

legal relationship with the signatory to the agreement and the plaintiff has alleged "substantially interdependent and concerted misconduct" between the non-signatory and signatory.[1]  Here, both conditions were met.  BriovaRX is a subsidiary of Catamaran Corporation, which had entered into an agreement with Transcript Pharmacy, Inc.  This agreement included a broad arbitration clause.  When you couple this with the fact Transcript had alleged BriovaRX's "joint conduct" with Catamaran was the source of its injury, the exception allowing non-signatories to compel arbitration applied.

¶2.     Because we find BriovaRX, though a non-signatory, had a right under these circumstances to enforce the arbitration agreement between Transcript and Catamaran, and because we also find neither BriovaRX nor Catamaran waived the right to arbitrate the new claims raised in Transcript's 2012 amended complaint, it was error for the circuit court to deny BriovaRX's and Catamaran's motions to compel arbitration.  We reverse and remand for the circuit court to grant the motions to compel arbitration.

### Background Facts and Procedural History

### I.      *Initial Lawsuit*

¶3.     Interestingly, BriovaRX and Transcript started off on the same side.  In 2009, Transcript sued Catalyst RX, the pharmacy-benefits manager for the Mississippi State and School Employees' Life and Health Plan (State Plan), for dropping Transcript from the State

---

[1] *Sawyers v. Herrin-Gear Chevrolet Co.*, 26 So. 3d 1026, 1039 (¶34) (Miss. 2010) (quoting *B.C. Rogers Poultry, Inc. v. Wedgeworth*, 911 So. 2d 483, 492 (¶30) (Miss. 2005)).

Plan.[2] Transcript claimed that Mississippi's "any willing provider" statute for pharmacies, Mississippi Code Annotated section 83-9-6 (Rev. 2011), entitled it to participate in the State Plan. Transcript prayed for emergency and permanent injunctive relief. *See* Miss. Code Ann. § 83-9-6(6) (creating a civil action for injunctive relief for violation of this section). It also sought a declaratory judgment that section 83-9-6 applied to the State Plan. Additionally, it requested money damages under several tort theories.

¶4. BriovaRX—a specialty pharmacy then named Medfusion RX—intervened as a similarly situated plaintiff.

¶5. Medfusion RX had entered a similar agreement with Catalyst RX as Transcript had. Both of these agreements contained broad arbitration clauses. Relying on these clauses, Catalyst RX moved to compel arbitration. But later Catalyst RX agreed that the declaratory action—which sought to resolve the legal question whether section 83-9-6 applied to the State Plan—should be decided by the circuit court. So Catalyst RX agreed to withdraw its motion to compel arbitration. In exchange, Transcript and Medfusion RX agreed to dismiss their claims for money damages. The dismissal of these claims was without prejudice. But Transcript and Medfusion RX expressly assured Catalyst RX that any later pursuit of their damages claims would happen in the arbitration forum.

¶6. The declaratory action was resolved in Transcript and Medfusion RX's favor. In February 2011, through a grant of partial summary judgment, the circuit court declared the

---

[2] Transcript sued the State Plan too.

3

any-willing-provider statute applied to the State Plan. While it took a year, Catalyst RX had this judgment certified as final and filed a notice of appeal. But that appeal was later withdrawn, owing to the fact that, in a separate appeal, the Mississippi Supreme Court conclusively held the any-willing-provider statute entitled willing pharmacies like Transcript to act as providers to State Plan members. *Miss. State & Sch. Emps' Life & Health Plan v. KCC, Inc.*, 108 So. 3d 932 (Miss. 2013).

## II. *Corporate Realignments*

¶7. While that first appeal was pending, several significant events happened.

¶8. First, both Catalyst RX and Medfusion RX changed their names and their legal relationship to each other. After a series of mergers, Catalyst RX became Catamaran. As part of these corporate changes, Catamaran acquired Medfusion RX. Catamaran then rebranded Medfusion RX as BriovaRX. Thus, Catamaran's once legal foe on the other side of the "v." became part of its corporate family, designated as Catamaran's specialty pharmacy.

¶9. Second, in light of this change, Catamaran—on Catalyst RX letterhead—mailed its customers nationwide a letter informing them their specialty pharmacy was changing and directing them to call for further instructions. Catamaran acknowledges this letter was erroneously sent to members of the State Plan. Because of the supreme court's ruling on the any-willing-provider question, Transcript legally could continue to be the specialty pharmacy for State Plan members.

4

### III. *Amended Complaint*

¶10. What Catamaran characterized as a mistake—sending the letter to State Plan members—Transcript called a conspiracy. As soon as it learned of the September 2012 letter, Transcript immediately moved to amend its complaint. The proposed amended complaint focused on the letter, alleging Catamaran and Transcript's former ally, BriovaRX f/k/a Medfusion RX, conspired together to steal Transcript's customers and that their "joint actions" had harmed Transcript. Transcript sought money damages under various tort theories—but only against BriovaRX. Transcript was careful in its prayer for relief to state that it was not seeking tort damages from Catamaran, but instead just injunctive and declaratory relief.

¶11. In light of these new allegations, Catamaran renewed its motion to compel arbitration. And while BrioavaRX did not assert the right to arbitrate in its initial answer to Transcript's amended complaint, it soon after filed a motion to amend its answer to include an arbitration defense. It also filed a separate motion to compel arbitration.

¶12. Both Catamaran's and BriovaRX's motions to compel arbitration were heard together, along with BrioavRX's motion to amend its answer. The circuit court denied all three motions. The court found Catamaran had waived its right to compel arbitration by participating thus far in the now three-year-old litigation. And the court found BriovaRX, as a third-party to the Catamaran/Transcript agreement, had no right to enforce the arbitration clause found in that agreement. And because BriovaRX had no right to compel arbitration,

there was no reason to allow BriovaRX to amend its answer with a futile assertion of arbitration.

¶13.    Because the denial of a motion to compel arbitration is a final judgment conferring appellate jurisdiction, Catamaran and BriovaRX immediately appealed. *See, e.g.*, *Wolgin v. Experian Info. Solutions, Inc.*, 101 So. 3d 1160, 1165-66 (¶16) (Miss. 2012) (recognizing appellate jurisdiction of the denial of a motion to compel arbitration).

## Standard of Review

¶14.    The right to compel arbitration is a legal question. Thus, we review the grant or denial of a motion to compel arbitration de novo. *Sawyers v. Herrin-Gear Chevrolet Co.*, 26 So. 3d 1026, 1034 (¶20) (Miss. 2010). As Mississippi follows the federal policy in favor of arbitration, we resolve "any doubts concerning the scope of arbitrable issues . . . in favor of arbitration[.]" *East Taylor, Inc. v. Ford*, 826 So. 2d 709, 713 (¶11) (Miss. 2002).

## Discussion

### I.    *Enforcement by Non-Signatory*

¶15.    Transcript drafted its amended complaint with an eye toward avoiding arbitration. Though Catamaran's alleged conspiratorial misconduct is integral to Transcript's various tort theories, Transcript clearly stated it did "not seek money damages against" Catamaran—only injunctive and declaratory relief. The claims for money damages were lodged against Catamaran's new subsidiary and Transcript's old ally, BriovaRX.[3] No doubt this was a

---

[3] Transcript also seeks money damages from the State Plan.

6

calculated move to honor its agreement (that it would only pursue money-damage claims against Catamaran in arbitration) while at the same time have its day in court. On de novo review, the question we must answer is whether Transcript's strategy worked.

¶16.    Unfortunately for Transcript, under these circumstances, we find it did not. Transcript cannot avoid the arbitration clause, even though it has only directed the arbitrable claims against BriovaRX, and not Catamaran. This is because the general rule that a non-signatory may not be bound by an arbitration contract has a "repeatedly recognized" exception. *Sawyers*, 26 So. 3d at 1038 (¶31). "[A] non-signatory may be able to enforce an arbitration agreement against a signatory where the non-signatory has a close legal relationship with a signatory of the agreement" and where the plaintiff alleges "substantially interdependent and concerted misconduct" between the signatory and non-signatory. *Id.* at (¶¶31-32) (citations omitted).

¶17.    Both conditions for this exception to apply have clearly been met. Catamaran and BriovaRX are in a close legal relationship. They are related companies, with BriovaRX being the specialty pharmacy of Catamaran.[4] And Transcript's allegations undoubtedly rest upon the "substantially interdependent and concerted misconduct" of Catamaran and BriovaRX. The amended complaint explicitly alleged that Catamaran acted "in concert" with BriovaRX "in an attempt to steal Transcript's patients"; BriovaRX was misuing Transcript's

---

    [4] While Transcript appears to question their relationship on appeal, in paragraph thirty of its amended complaint, Transcript stated it had verified through public records that Catamaran now owns BriovaRX.

7

patient information, which Catamaran provided to BriovaRX; BriovaRX, the State Plan, and Catamaran have "conspired together"; BriovaRX has unfairly profited "from the conspiratorial acts" committed with the State Plan and Catamaran; and BriovaRX, the State Plan, and Catamaran's civil conspiracy has damaged Transcript monetarily. Thus, BriovaRX has a right to enforce the arbitration clause in the Catamaran/Transcript agreement.

¶18. Further, the fact Transcript brings tort claims and not breach-of-contract claims against BriovaRX is a distinction without a difference, as far as arbitration is concerned. When determining the scope of arbitration, we focus "on factual allegations in the complaint rather than the legal causes of action asserted." *Scruggs v. Wyatt*, 60 So. 3d 758, 766 (¶16) (Miss. 2011) (quoting *Waste Mgmt., Inc. v. Residuos Industriales Multiquim, S.A.*, 372 F.3d 339, 344 (5th Cir. 2004)). "If the allegations underlying those claims 'touch matters' covered by the parties' agreements, then those claims must be arbitrated, whatever the legal labels attached to them."[5] *Id.*

¶19. Here, the allegations underlying Transcript's tort claims "touch matters" covered by the Catamaran/Transcript agreement. For example, the contract covers how customer information may be used. And the amended complaint specifically alleges Catamaran and BriovaRX misused Transcript's customer list to gain an unfair business advantage. But

---

[5] The arbitration clause in the Catamaran/Transcript contract is *broad*, covering "[a]ny controversy or claim arising out of *or relating to*" the agreement. (Emphasis added). With broad arbitration clauses, it is enough that the claims brought "touch" matters in the agreement. *Kulpa v. OM Fin. Life Ins.*, 558 F. Supp. 2d 676, 684 (S.D. Miss. 2008).

much more broadly, Transcript's allegations of conspiracy and illegal interference touch Transcript's right to operate under the agreement itself. Given our directive to resolve "any doubts concerning the scope of arbitrable issues . . . in favor of arbitration," we must find that Transcript's new claims fall under the broad, enforceable arbitration clause. *East Taylor*, 826 So. 2d at 713 (¶11).

¶20. We are mindful that the remedy provided to the non-signatory in *Sawyers* is to be applied "cautiously" and only "to prevent unconscionable results." *Sawyers*, 26 So. 3d at 1039 (¶35). But just as in *Sawyers*, we find Transcript cannot avoid the arbitration agreement with Catamaran, while at the same time seek money damages for BriovaRX allegedly conspiring to interfere with that agreement. *See id.* at (¶34). Under these circumstances, BriovaRX had a right to enforce the arbitration clause in the Catamaran / Transcript agreement.

## II. No Waiver

¶21. We also find neither BriovaRX nor Catamaran waived the right to arbitrate the new claims raised in the 2012 amended complaint.

¶22. It is true that participation in litigation leads to waiver of the right to arbitrate. *See Lemon Drop Props., LLC v. Pass Marianne, LLC*, 73 So. 3d 1131, 1135 (¶12-13) (Miss. 2011). It is also true that Catamaran, as defendant Catalyst RX, and BriovaRX, as plaintiff Medfusion RX, had participated in the litigation with Transcript for three years before filing their motions to arbitrate. But that participation was limited, *by agreement*, to litigating the

declaratory-judgment action. Back in August 2010, Catamaran only withdrew its original motion to compel arbitration so the circuit court could resolve specifically whether section 83-9-6 applied to the State Plan. And BriovaRX, along with Transcript, conceded that any future claims for money damages should be asserted in the arbitration forum.

¶23. As this court has previously acknowledged, parties can agree to arbitrate some claims and litigate others. *Cf. Nobel Real Estate, Inc. v. Seder*, 101 So. 3d 197, 202 (¶19) (Miss. Ct. App. 2012) (enforcing a narrow arbitration clause that agreed to arbitration of some, but not all, claims between the parties). Thus, litigating the purely legal questions—whether section 83-9-6 applies and, if so, whether Transcript was entitled to the injunctive relief section 83-9-6(6) affords—did not act as a waiver of other arbitrable claims. This is especially true here where the allegations underlying the amended complaint rely on events that did not even occur until September 2012. Catamaran and BriovaRX cannot be deemed to have waived the arbitration of claims two years before those claims arose.

¶24. Further, for there to be waiver of the right to arbitration, there must be detriment or prejudice to the opposing party. *Lemon Drop Props.*, 73 So. 3d at 1135 (¶12). Here, Transcript has suffered no prejudice as far as the amended complaint is concerned. Catamaran asserted its right to arbitrate the amended claims *before* Transcript was even permitted to file its amended complaint. Further, Transcript had literally known for years of Catamaran's intent to seek arbitration of any future claims besides the declaratory action—especially any claims that sought tort damages.

10

¶25. True, BriovaRX did not assert the affirmative defense of arbitration in its initial answer. But it quickly sought to amend its answer before any significant litigation ensued. And it was only denied the requested amendment based on the trial judge's erroneous belief that BriovaRX could not rely on the arbitration agreement between Catamaran and Transcript. Again, for participation in litigation to amount to waiver, the party opposing arbitration must be prejudiced. And here, Transcript was not prejudiced by BriovaRX's failure to assert arbitration in its original answer. Catamaran's motion to compel arbitration was already pending, and BriovaRX's motion to compel arbitration soon followed.

¶26. Therefore, the judgment denying arbitration is reversed, and this case is remanded for the circuit court to grant the motions to compel arbitration of all counts in the amended complaint seeking money damages.

¶27. **THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT IS REVERSED, AND THIS CASE IS REMANDED FOR THE CIRCUIT COURT TO COMPEL ARBITRATION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.**

**LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, ROBERTS, CARLTON, FAIR AND JAMES, JJ., CONCUR. IRVING, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**