# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-CA-00994-COA

TARAN JENKINS                                                                APPELLANT

v.

FORD MOTOR COMPANY AND HOMER                                    APPELLEES
SKELTON FORD INC.

DATE OF JUDGMENT:               07/30/2024
TRIAL JUDGE:                    HON. CELESTE EMBREY WILSON
COURT FROM WHICH APPEALED:      DESOTO COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:         CHRISTOPHER ETHAN KITTELL
ATTORNEYS FOR APPELLEES:        JEFFREY BARTOW CANNON JR.
                                JOSEPH M. SPARKMAN JR.
                                JEFFREY P. DOSS
NATURE OF THE CASE:             CIVIL - CONTRACT
DISPOSITION:                    REVERSED AND REMANDED - 12/02/2025
MOTION FOR REHEARING FILED:

**BEFORE CARLTON, P.J., LAWRENCE AND WEDDLE, JJ.**

**LAWRENCE, J., FOR THE COURT:**

¶1.     Taran Jenkins bought a used vehicle from Homer Skelton Ford Inc.  At the time of purchase, she bought an extended warranty from Ford Motor Company (Ford). After Ford declined to repair her vehicle, she filed a lawsuit alleging breach of the extended warranty. Ford filed an answer to the complaint on June 9, 2023, but waited until May 31, 2024, to file a motion to compel arbitration. The trial court entered an order compelling arbitration. Jenkins appealed, arguing the defendants waived arbitration. We find that although Ford included arbitration in its answer as an affirmative defense, it failed to "pursue" that affirmative defense by delaying to seek an order compelling arbitration and by engaging in

the litigation process. We therefore reverse and remand.

## FACTS AND PROCEDURAL HISTORY

¶2. On March 4, 2022, Taran Jenkins purchased a 2017 Infiniti QX60 from Homer Skelton Ford Inc. (Homer Skelton) in Olive Branch, Mississippi. At the time of purchase, the vehicle had 53,062 miles on the odometer. Homer Skelton sold Jenkins two warranties, which were issued and administered by Ford Motor Company. The first warranty was a "BlueAdvantage Warranty," which covered various repairs or replacement parts on the vehicle through June 4, 2022, or up to 57,062 miles. The second warranty was a Ford "PowertrainCARE Warranty," which provided coverage of the vehicle for certain repairs and replacements of parts through July 12, 2023, or up to 69,231 miles. When Jenkins purchased the Infiniti, she and Homer Skelton entered into an arbitration agreement.

¶3. Jenkins alleged that on May 25, 2022, when the vehicle had 56,925 miles on it, the check engine light came on. Jenkins brought the vehicle to Infiniti of Memphis to be inspected and repaired. Upon inspection, Infiniti of Memphis advised Jenkins that sludge was found in the vehicle's engine. Thereafter, Jenkins submitted a warranty claim to Ford under the BlueAdvantage Warranty, and Ford denied the claim.

¶4. Jenkins also alleged that on September 2, 2022, when the vehicle had 59,884 miles on it, she had the vehicle towed to Infiniti of Memphis because it would not start. Infiniti of Memphis diagnosed various repairs that needed to be made to the vehicle, including the sludge in the engine. Jenkins submitted a warranty claim to Ford for the repairs under the Ford PowertrainCARE Warranty, and Ford again denied the claim.

2

¶5.     On May 9, 2023, Jenkins filed a lawsuit against Homer Skelton and Ford regarding the denial of his warranty claims for the vehicle. In his complaint, Jenkins alleged claims against Ford for breach of warranty, bad faith, and post-claim underwriting. Jenkins also alleged claims against Homer Skelton for intentional or negligent misrepresentation regarding the two warranties Ford sold to Jenkins, as well as breach of the implied warranty of merchantability.

¶6.     On June 8, 2023, Homer Skelton filed a notice of special appearance stating that it "will contest the allegations presented in the pleadings including, but not limited to, jurisdiction and venue." On June 9, 2023, Ford filed its answer, which included the affirmative defense of arbitration.  The parties engaged in discovery, with the following actions taken:

- On June 9, 2023, Ford filed its notice of service for its interrogatories to Jenkins, requests for production to Jenkins, and notice of taking depositions of Jenkins.
- On July 10, 2023, Jenkins filed a notice of service of her responses to Ford's first interrogatories and first request for production.
- On January 18, 2024, Jenkins filed a notice for service of her first set of interrogatories and first set of requests for production to Ford and Homer Skelton.
- On February 1, 2024, Ford filed its notice of intent to serve subpoenas on third parties Infiniti Stuart of Stuart, Florida and Warren Henry Infiniti of North Miami, Florida.
- On March 6, 2024, Ford filed its notice of service of its responses to Jenkins's first set of interrogatories and first set of requests for production.
- On March 8, 2024, Jenkins filed a notice of service for her first set of requests for admissions to Homer Skelton.[1]

---

[1] Homer Skelton never answered the requests for admissions. Jenkins filed a motion to deem requests for admissions admitted on April 22, 2024. That motion was set for a hearing on July 25, 2024. When it was set, Ford and Homer Skelton filed a motion for

¶7.    On May 31, 2024, Ford and Homer Skelton filed a motion to compel arbitration and stay proceedings in which the defendants jointly moved to enforce the arbitration agreement entered into by Jenkins and Homer Skelton.

¶8.    On June 10, 2024, Jenkins filed her response to the motion to compel arbitration and a corresponding memorandum in opposition. In the memorandum, Jenkins stated that the circuit court should find that the defendants waived arbitration because they "waited over a year to seek arbitration" and "actively participated in the litigation process." On June 17, 2024, Ford and Homer Skelton filed their reply and claimed that they did not waive their right to compel arbitration because "there was not a substantial and unreasonable delay in pursuing the right to compel arbitration nor was there active participation in the litigation process sufficient to constitute waiver of the right to compel arbitration."

¶9.    On July 25, 2024, the court held a hearing on the defendants' motion to compel arbitration. At the hearing, Ford stated that it "filed an answer and exchanged a little bit of written discovery." Ford explained that no depositions were taken, and it issued two non-party subpoenas to Infiniti dealerships to obtain documents related to the vehicle since Ford did not have that information because it was not a Ford vehicle. Conversely, Jenkins' counsel explained that Ford actively participated in litigation by serving and answering written discovery, serving third-party subpoenas, and filing a notice to take Jenkins' deposition.[2]

¶10.    The attorney for Homer Skelton expressed that it only appeared specially in the matter.

---

arbitration on May 31, 2024.

[2] Ford noticed Jenkins' deposition, but it was never taken.

He also claimed that he asked for the arbitration agreement to be produced from his client, Homer Skelton, but it was "slow in coming" and over a year later before it was presented to the circuit court. The court asked Homer Skelton's counsel what the reason for the delay was in Homer Skelton's counsel obtaining the arbitration agreement. He responded that he asked Holmer Skelton "to give [him] all the documents that they had in their possession," but the physical documents were not at the dealership; Homer Skelton had to get them from the company's information technology (IT) department. Once Homer Skelton obtained the physical documents, they were turned over to counsel.[3]

¶11.    Jenkins' counsel explained that Homer Skelton's counsel emailed him, and arbitration was never mentioned. Jenkins' counsel further explained that Homer Skelton's counsel never mentioned arbitration until Homer Skelton joined Ford's motion to compel arbitration. Moreover, Homer Skelton's counsel told Jenkins' counsel that Homer Skelton's responses to the requested interrogatories and requests for production were going to be sent to Jenkins.

¶12.    After hearing the arguments, the court entered its order on July 30, 2024, stating:

> [T]he sum total of Homer Skelton's participation in the litigation-process is its filing of a notice of special appearance, wherein it challenged, without limitation, the Court's jurisdiction and venue, its filing of a motion to extend its time to respond to discovery following the filing of motions to compel by Jenkins, and its cooperation in scheduling a hearing on the instant motion. The Court finds such minimal activity to be neither reflective of active engagement in the litigation process nor indicative of Homer Skelton's intent to forgo its right to arbitration. Indeed, to the contrary, the Court finds that by posturing itself to contest this Court's jurisdiction and venue and by refusing to respond to Jenkins' discovery requests, Homer Skelton demonstrated its clear intent not to participate in the litigation process.

---

[3] Nothing in the record explains why it would take almost twelve months to obtain a printed copy of the arbitration agreement from its own IT department.

As for Ford's participation, the court found:

> [W]hile certainly more substantial than that of Homer Skelton, [Ford's participation in the litigation process] nevertheless likewise fails, in this Court's opinion, to amount to the type of active participation Mississippi courts have found to constitute a waiver of arbitration.

¶13. The court granted the motion and referred the case to arbitration in accordance with the terms of the arbitration agreement. The court was "unable to locate any caselaw to suggest that such limited activity, particularly when accompanied by Ford Motor's clear statement asserting arbitration as an affirmative defense, constitutes a waiver of arbitration." Jenkins appeals, arguing that the defendants "waived their right to compel arbitration."

**STANDARD OF REVIEW**

¶14. "When a trial court rules on a motion to compel arbitration, we review the trial judge's factual findings under an abuse-of-discretion standard, and we conduct a de novo review of all legal conclusions." *Gregory Meridian Acquisition LLC v. McFarland*, 386 So. 3d 381, 387 (¶14) (Miss. Ct. App. 2023) (quoting *Magee Cmty. Care Ctr. LLC v. Perkins*, 333 So. 3d 34, 39 (¶13) (Miss. Ct. App. 2021)). "The right to compel arbitration is a legal question." *Briovarx LLC v. Transcr. Pharm. Inc.*, 163 So. 3d 311, 315 (¶14) (Miss. Ct. App. 2015). "Thus, we review the grant or denial of a motion to compel arbitration de novo." *Id.* (citing *Sawyers v. Herrin-Gear Chevrolet Co.*, 26 So. 3d 1026, 1034 (¶20) (Miss. 2010)). On the other hand, "[a] trial court's determination that a party did or did not waive an affirmative defense is subject to an abuse-of-discretion standard of review." *Murphy v. William Carey Univ.*, 382 So. 3d 1181, 1185 (¶11) (Miss. Ct. App. 2024) (quoting *Kinsey v. Pangborn Corp.*, 78 So. 3d 301, 306 (¶13) (Miss. 2011)).

6

## ANALYSIS

¶15. Jenkins argues that the defendants waived her right to compel arbitration by "delay[ing] filing [their] motion to compel arbitration" for over a year and by "substantially engag[ing] in the litigation process."

¶16. The Mississippi Rules of Civil Procedure mandate that certain affirmative defenses be stated in a responsive pleading, such as an answer. M.R.C.P 8(c).[4] Courts have interpreted this mandatory language to mean that any affirmative defense not included is deemed waived. "[A] defendant's failure to timely and reasonably raise and pursue the enforcement of any affirmative defense or other affirmative matter or right which would serve to terminate or stay the litigation, coupled with **active participation** in the litigation process, will ordinarily serve as a waiver." *Miss. Credit Ctr. Inc. v. Horton*, 926 So. 2d 167, 180 (¶44) (Miss. 2006) (emphasis added). "Parties seeking to enforce arbitration are to file a 'Motion to Compel Arbitration and to Stay Proceedings Pending Arbitration' immediately upon discovery that the controversy or suit is subject to an arbitration agreement." *Century 21 Maselle & Assocs. Inc. v. Smith*, 965 So. 2d 1031, 1038 (¶10) (Miss. 2007). This is because

---

[4] Mississippi Rule of Civil Procedure 8(c) states:

> In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense. When a party has mistakenly designated a defense as a counter-claim or a counter-claim as a defense, the court on terms, if justice so requires, shall treat the pleading as if there had been proper designation.

7

"[t]aking advantage of pre-trial litigation such as answers, counterclaims, motions, requests, and discovery obviates the right to arbitration." *Id.* (citing *Cox v. Howard, Weil, Labouisse, Friedrichs Inc.*, 619 So. 2d 908, 914 (Miss. 1993). Ultimately, "either active participation or substantial invocation of the litigation process which results in detriment or prejudice to the other party, or engaging in conduct inconsistent with timely enforcing the arbitration agreement, constitutes waiver." *Century 21 Maselle*, 965 So. 2d at 1036 (¶8) (citing *Horton*, 926 So. 2d at 180 (¶42); *Univ. Nursing Assocs. PLLC and the Univ. of Miss. Med. Ctr. v. Phillips*, 842 So. 2d 1270, 1278 (¶30) (Miss. 2003); *Cox*, 619 So. 2d at 913-14). The Mississippi Supreme Court has also held that "absent **extreme and unusual circumstances**[,] an eight month unjustified delay in the assertion and pursuit of any affirmative defense or other right which, if timely pursued, could serve to terminate the litigation, coupled with active participation in the litigation process, constitutes waiver as a matter of law." *Horton*, 926 So. 2d at 181 (¶45) (emphasis added).

¶17.    Jenkins relied on *Horton* to support her argument. In *Horton*, the defendants raised their right to compel arbitration in each of their answers, but they did not timely file a motion to compel arbitration until eight months after the start of the litigation. *Id.* at 180 (¶41). During those eight months, the defendants "proceeded to substantially engage the litigation process by consenting to a scheduling order, engaging in written discovery, and conducting Horton's deposition." *Id.* The Mississippi Supreme Court held that when there "is a substantial and unreasonable delay in pursuing the right, coupled with active participation in the litigation process, we will not hesitate to find a waiver of the right to compel

8

arbitration." *Id.* at (¶42). As stated earlier, the Mississippi Supreme Court also held that **"absent extreme and unusual circumstances**[,] an eight month unjustified delay in the assertion and pursuit of any affirmative defense or other right which, if timely pursued, could serve to terminate the litigation, coupled with active participation in the litigation process, constitutes waiver as a matter of law." *Id.* at 181 (¶45) (emphasis added).

¶18.    The Mississippi Supreme Court addressed raising arbitration as an affirmative defense in *Century 21 Maselle*, where the defendant Century 21 filed an answer to the plaintiff's complaint and requested a jury trial. *Century 21 Maselle*, 965 So. 2d. at 1034 (¶4). In Century 21's answer, it asserted that the complaint should be dismissed and arbitration compelled. *Id.* That same day, Century 21 propounded interrogatories and requests for production of documents, but responses were not received. *Id.* Sixty-one days after the complaint was filed, the motion to compel arbitration was noticed for a hearing. *Id.* The circuit court found that the defendant waived its right to compel arbitration because it requested a jury trial and served discovery on the plaintiffs. *Id.* at (¶5). On appeal, the Mississippi Supreme Court held that "[p]arties seeking to enforce arbitration are to file a 'Motion to Compel Arbitration and to Stay Proceedings Pending Arbitration' **immediately** upon discovery that the controversy or suit is subject to an arbitration agreement." *Id.* at 1038 (¶10) (emphasis added). The Court went on to explain that "[a]ll proceedings, including the filing of responsive pleadings (answer or otherwise) and discovery, in prospective cases involving an arbitration agreement shall be suspended upon the timely filing and notice of a 'Motion to Compel Arbitration and to Stay Proceedings Pending Arbitration.'" *Id.* The Supreme Court, however, reversed the

9

circuit court's finding because although Century 21's acts in initiating discovery were "precipitously close to satisfying the waiver exception," the waiver exception was not met because the Smiths "offered no evidentiary basis for the lower court to find detriment or prejudice either by incurred legal expense or procedural delay. . . . " *Id.* at 1038 (¶12).

¶19.    In *Murphy*, 382 So. 3d at 1183 (¶1), this Court discussed the consequences of delaying raising an affirmative defense and actively participating in litigation. In that case, William Carey University raised the statute of limitations and pre-suit notice requirements as affirmative defenses in its answer to a complaint filed in 2015. *Id.* at (¶3). However, William Carey University did not pursue these defenses until December 2017, which was more than two years after the litigation began. *Id.* at 1186 (¶14). During those two years, William Carey University actively participated in the litigation by "propound[ing] and respond[ing] to interrogatories and document requests, designat[ing] experts, litigat[ing] discovery disputes, and t[aking] depositions." *Id.* at 1188 (¶21). The circuit court found that William Carey University did not waive its defense. *Id.* On appeal, this Court reversed and remanded, quoting *Horton*, 926 So. 2d at 181 (¶45), stating that "unjustified delay. . . , coupled with active participation in the litigation process, constitutes waiver as a matter of law." *Murphy*, 382 So. 3d. at 1188 (¶¶21-22).

¶20.    Similarly, in *Radco Fishing and Rental Tools Inc. v. Commercial Resource Inc.*, 407 So. 3d 167 (Miss. 2025), the Mississippi Supreme Court recently addressed this rule from *Horton* and waiver of affirmative defenses when a party fails to pursue. In that case, the trial court granted partial summary judgment dismissing the defendants Dynasty Energy Services

10

and Radco Fishing's affirmative defenses that had not been pursued. The circuit court found that Dynasty and Radco waived their affirmative defenses because "twenty-one and a quarter months passed without any evidence that Dynasty and Radco were purs[u]ing their affirmative defenses." *Id.* at 181 (¶33) Furthermore, during that time Dynasty and Radco "actively participated in the litigation by filing counterclaims and third-party complaints, filing motions, propounding discovery, answering discovery, designating witnesses, and entering scheduling orders." *Id.* at 178 (¶20). The Mississippi Supreme Court affirmed the trial court's grant of summary judgment dismissing Dynasty and Radco's affirmative defenses *Id.* at 179 (¶26). The court wrote "[T]he record shows that twenty-one and a quarter months passed without any evidence that Dynasty and Radco were **purs[u]ing** their affirmative defenses." *Id.* at 181 (¶33) (emphasis added).

¶21.    Here, the record indicates that Ford raised arbitration as an affirmative defense in its answer. However, instead of timely moving to compel arbitration, the defendants chose to substantially participate in the litigation process. Ford and Homer Skelton were served with Jenkins' complaint on May 10, 2023, and May 15, 2023, respectively. They filed their motion to compel arbitration over a year later on May 31, 2024. The circuit court found Ford and Homer Skelton "failed to assert their right to arbitration until well after the eight (8) month presumptive waiver" set out in *Horton* since they "waited nearly thirteen (13) months." Furthermore, Ford actively participated in the litigation process before seeking to compel arbitration by filing an answer, serving interrogatories, and requesting production of documents. Ford also responded to Jenkins' interrogatories and requests for production of

11

documents. Additionally, Ford subpoenaed the documents of third parties in Florida, which had no connection to whether an arbitration agreement existed between Homer Skelton and Jenkins. The only plausible use of subpoenaing the Florida Infiniti dealerships' records was to assist the defense of the lawsuit's allegations on the merits.[5] Further, Homer Skelton's counsel sent emails to Jenkins' counsel ensuring that Homer Skelton would respond to Jenkins' discovery requests. In conclusion, this Court finds there was an unreasonable delay, in filing the motion to compel arbitration and that this delay coupled with Ford's active participation in the litigation process, amounted to a failure to pursue.

¶22.    In its brief, Ford argues that the delay in moving to compel arbitration was justified because it "immediately moved to compel arbitration upon receiving a copy of the agreement from Homer Skelton."[6] In *Century 21 Maselle*, 965 So. 2d at 1039 (¶12), the Mississippi Supreme Court explained:

> This Court 'may not act upon or consider matters which do not appear in the record and **must confine itself to what actually does appear in the record**' Litigants shall prospectively follow the procedure mandated by this Court and separately file a "Motion to Compel Arbitration and to Stay Proceedings Pending Arbitration[,]"and then promptly schedule and notice a hearing on their motions. **Discovery, a procedural implement of the courts, should not be initiated as its use may be deemed active participation in a court proceeding and inconsistent with the right to arbitration.**

(Emphasis added) (citing *Ditto v. Hinds County*, 665 So. 2d 878, 880 (Miss.1995) (quoting *Shelton v. Kindred*, 279 So. 2d 642, 644 (Miss.1973)).

---

[5] Ford partially admitted as much in oral argument before this Court.

[6] Homer Skelton did not file a brief with this Court and did not appear at the oral argument this Court held on this issue.

¶23. The only attempt at explaining in the record why it took nearly twelve months to file the motion to compel arbitration occurred at the hearing and reads as follows:

| | |
|---|---|
| **The Court:** | What was the reason for the delay in your being able to obtain the Agreement? |
| **Mr. Sparkman:** | Your Honor, I submitted or asked for my client when they first gave me the lawsuit to give me all the documents that they had in their possession. They had some turnover in their dealership, and they gave them to me as soon as they compiled them. **They had to get them off microfiche** or however they're storing their documents. They did not have those physical documents in the dealership, so they had to get those from their IT department. |
| **The Court:** | Thank you, sir. |
| **Mr. Kittell:** | Can I make one point, Your Honor, or two points, I guess? |
| **The Court:** | Yes, sir. |
| **Mr. Kittell:** | First of all, that's the first time– well, the first time I ever heard that they couldn't get the Arbitration Agreement or that there was even an Arbitration Agreement was when they filed the motion to compel arbitration. They had a year. If they would've come to me and said, hey, look, we're looking for this, we're going to file arbitration -- that's how you handle that. You don't just sit there silently and actually claiming things that are contrary to that, like we're going to send you discovery responses here shortly, my clients are taking their time responding. |

(Emphasis added).

¶24. The trial court found that the "defendants failed to assert the right to arbitration until well after the eight (8) month presumptive waiver." Unsure of or confused by the delay, the trial court expressed concern about how there was such a lengthy delay in obtaining a copy of a document in Homer Skelton's possession. The court stated in its order that it "questions the Defendants given reason for such delay, namely that they were waiting to obtain a copy

13

of the subject arbitration agreement." Despite these findings, the court still found "that [n]either Homer Skelton or Ford Motor waived arbitration" and granted the motion to compel arbitration. However, as stated earlier, *Century 21 Maselle* requires "[p]arties seeking to enforce arbitration . . . to file a 'Motion to Compel Arbitration . . .' **immediately** upon discovery that the controversy or suit is subject to an arbitration agreement." *Century 21 Maselle*, 965 So. 2d at 1038 (¶10) (emphasis added). There is nothing immediate about a nearly twelve-month delay. The record contains no explanation for the delay in filing the motion to compel arbitration other than a comment by the attorney that the information had to be retrieved from "microfiche." Yet no person or document provided an explanation as to why it would take twelve months to print a one-page document from "microfiche." No affidavit or sworn testimony was presented that established Homer Skelton did not provide the agreement to Ford until a certain date. No affidavit or sworn testimony was presented that established why Homer Skelton had such difficulty printing a one-page arbitration agreement in a more timely manner. The absence of such evidence caused not only concern to the trial court, but also to this Court. Failing to print a document from "microfiche" was not the kind of circumstance the Mississippi Supreme Court contemplated when it wrote that "absent extreme and unusual circumstances," waiver occurs unless a party can justify more than an eight-month delay in filing a motion to compel arbitration. *Horton*, 926 So. 2d at 181 (¶45). And again, the trial court "question[ed] the Defendants given reason for such delay, namely that they were waiting to obtain a copy of the subject arbitration agreement." The failure to file the motion to compel in a timely manner, coupled with active participation in the

14

discovery process, amounted to a waiver of the pled affirmative defense pursuant to the plea and pursuant to the requirement in *Horton*.[7] Therefore, we find that the trial court abused its discretion by finding the defense of arbitration was not waived when nothing in the record supports an "extreme or unusual circumstance[]" in the delay of filing the motion to compel arbitration. *See id*. The only explanation offered was the time needed to print a one-page document "from microfiche."

¶25. In order to prove that the arbitration agreement was waived, Mississippi law requires that Jenkins must have been prejudiced. The Mississippi Supreme Court held that "[w]aiver will be found when the party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party." *Phillips*, 842 So. 2d at 1278 (¶28) (quoting *Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324, 326 (5th Cir. 1991)). Prejudice "refers to the inherent unfairness—in terms of delay, **expense**, or damage to a party's legal position—that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue." *Id.* at (¶30) (emphasis added).

¶26. Jenkins argues the prejudice element is no longer a requirement to establish waiver of the right to arbitrate because the United States Supreme Court eliminated that requirement in *Morgan v. Sundance Inc.*, 596 U.S. 411, 419 (2022), by stating that "prejudice is not a condition of finding that a party, by litigating too long, waived its right to stay litigation or compel arbitration . . . ." The Mississippi Supreme Court has yet to adopt the United States Supreme Court's holding in *Morgan*, and therefore, under present Mississippi law, the

---

[7] The *Horton* case used the language "assertion and pursuit." *Id*.

15

prejudice element can still be argued to apply. "This Court cannot overrule [Mississippi] Supreme Court precedent." *Evans v. State*, 282 So. 3d 659, 663 (¶14) (Miss. Ct. App. 2019) (quoting *Thompson v. State*, 230 So. 3d 1044, 1055 (¶36) (Miss. Ct. App. 2017)). Therefore, the Supreme Court of Mississippi's caselaw requiring prejudice to be present to establish waiver is still required. *See Century 21 Maselle*, 965 So. 2d at 1036 (¶8) (holding "either active participation or substantial invocation of the litigation process **which results in detriment or prejudice to the other party**, or engaging in conduct inconsistent with timely enforcing the arbitration agreement, constitutes waiver." (emphasis added) (citing *Horton,* 926 So. 2d at 180 (¶42)); *Phillips*, 842 So. 2d at 1278 (¶30); *Cox*, 619 So. 2d at 913-14).

¶27.   While it appears to this Court that the United States Supreme Court has indeed eliminated the prejudice element, we must follow current Mississippi Supreme Court precedent and, therefore, address prejudice out of an abundance of caution. Due to Ford and Homer Skelton's twelve-month delay in filing a motion to compel arbitration, Jenkins spent time and incurred expenses when she propounded and responded to discovery requests. Jenkins propounded discovery to Ford and Homer Skelton, which also caused her attorneys to spend time and incur expenses.  Jenkins' attorneys had to file numerous motions, such as a motion to deem the requests for admissions admitted and a motion to compel responses from Homer Skelton to Jenkins' interrogatories and requests for production of documents. The preparation of those motions took time and cost the attorneys' expenses.[8] Therefore, we

_____

[8] There is a difference between attorney's fees and expenses, both of which can certainly prejudice a litigant. Expenses are costs attorneys incur on behalf of a client during the litigation process. Attorney's fees are paid to the lawyer for his work and time on a case. Fees may be hourly, in which case Jenkins certainly was prejudiced in paying her attorneys

16

find that Jenkins was prejudiced by Ford's delay in pursuing the affirmative defense of arbitration since it required her to incur litigation expenses that could have been avoided had Ford and Homer Skelton timely asserted their right to arbitrate *See Phillips*, 842 So. 2d at 1278 (¶28).

## CONCLUSION

¶28. Ford and Homer Skelton waived their affirmative defense to arbitration when they did not file their motion to compel arbitration until a year after asserting it as an affirmative defense in Ford's answer to the complaint. Further, that delay, coupled with their active participation in the litigation process in conducting discovery and issuing subpoenas to a third party, which went to the merits of the case, all served to prejudice Jenkins.

¶29. **REVERSED AND REMANDED.**

**CARLTON, P.J., WESTBROOKS, McDONALD, McCARTY AND WEDDLE, JJ., CONCUR. EMFINGER, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY BARNES, C.J., WILSON, P.J., AND LASSITTER ST. PÉ, J.**

**EMFINGER, J., DISSENTING:**

¶30. The majority reverses the trial court's order to compel arbitration because the defendants failed to timely pursue arbitration. I would affirm the trial court's factual finding that the defendants did not waive their right to compel arbitration as a result of their limited participation in the litigation process. Accordingly, I respectfully dissent.

---

for preparing documents mentioned. If she had a continency fee arrangement, then she probably did not incur any more attorney's fees, but expenses of the litigation are certainly taken out of any settlement. Jenkins, in the end, would be prejudiced by paying for the added expenses of the work that occurred on her case during the twelve months before Ford and Homer Skelton filed the motion to compel arbitration.

17

¶31.     In *Wilson v. Lexington Manor Senior Care LLC*, 357 So. 3d 1112, 1117-19 (¶¶10-14)

(Miss. Ct. App. 2022), this Court described the appellate standard of review to be used in

cases where the issue is whether a party has waived its right to compel arbitration:

> "In reviewing an appeal of an order compelling arbitration, **we review the trial judge's factual findings under an abuse-of-discretion standard**, and we conduct a de novo review of all legal conclusions." *Virgil v. Sw. Miss. Elec. Power Ass'n*, 296 So. 3d 53, 59 (¶11) (Miss. 2020) (quoting *Smith v. Express Check Advance of Miss. LLC*, 153 So. 3d 601, 605-06 (¶8) (Miss. 2014)).

> . . . .

> **Our Supreme Court "[does] not favor findings of waiver of the right to compel arbitration."** *Nutt v. Wyatt*, 107 So. 3d 989, 993 (¶11) (Miss. 2013) (citing *MS Credit Ctr. Inc. v. Horton*, 926 So. 2d 167, 179 (¶39) (Miss. 2006))**. "The existence of a waiver is a factual determination to be made by the trial court, and this Court's scope of review is limited and governed by the manifest error/substantial evidence standard."** *Scott Addison Constr. Inc. v. Lauderdale Cnty. Sch. Sys.*, 789 So. 2d 771, 776 (¶16) (Miss. 2001).

> . . . .

> "A party claiming waiver must offer sufficient evidence at a hearing to overcome the presumption in favor of arbitration." *McCullar v. BankPlus*, 172 So. 3d 771, 773 (¶10) (Miss. Ct. App. 2013).

(Emphasis added). In *Fairchild v. KS Ocean Springs Real Est. LLC*, 403 So. 3d 713, 727

(¶35) (Miss. Ct. App. 2025), we described our standard as follows:

> When reviewing a trial court's decision for abuse of its discretion, we normally will affirm unless "we have a definite and firm conviction that the circuit court committed a 'clear error of judgment' in reaching its conclusion after weighing any relevant factors." *Clarksdale Pub. Utils. Comm'n v. Miss. Dep't of Emp. Sec.*, 393 So. 3d 1048, 1064 (¶49) (Miss. Ct. App. 2024).

In *Ashmore v. Mississippi Authority on Educational Television*, 148 So. 3d 977, 982 (¶11)

(Miss. 2014), the supreme court discussed the "abuse of discretion" standard:

18

**Abuse of discretion is the most deferential standard of review appellate courts employ**. *See Fitch v. Valentine*, 959 So. 2d 1012, 1022 (Miss. 2007) ("this Court applies the deferential abuse of discretion standard of review"); *see also White v. Thompson*, 822 So. 2d 1125, 1128 (Miss. Ct. App. 2002) (abuse of discretion "is highly deferential").

(Emphasis added). This Court has been reversed when we have failed to show deference to a trial court's factual findings. In *Leasy v. SW Gaming LLC*, 335 So. 3d 555, 557-58 (¶¶6-7) (Miss. 2022), the supreme court reasoned:

> However, instead of applying the abuse-of-discretion standard, **the Court of Appeals performed its own de novo review, abandoning the requisite deference to the trial court's decision.**
>
> In *Nunnery v. Nunnery*, this Court discussed the abuse-of-discretion standard of review:
>
>> Black's Law Dictionary defines "abuse of discretion" as **"An appellate court's standard for reviewing a decision that is asserted to be grossly unsound, unreasonable, illegal, or unsupported by the evidence."** *Abuse of Discretion*, Black's Law Dictionary (10th ed. 2014). The reviewing court should not reverse a discretionary finding by the lower court unless it comes to a "definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon weighing of relevant factors." *Plaxico v. Michael*, 735 So. 2d 1036, 1039 (¶11) (Miss. 1999) (quoting *Cooper v. State Farm Fire & Cas. Co.*, 568 So. 2d 687, 692 (Miss. 1990)).
>>
>>> When we say that the trial court has discretion in a matter, we imply that there is a limited right to be wrong. At the very least the statement imports a view that there are at least two different decisions that the trial court could have made each of which on appeal must be affirmed. Indeed, if there are not at least two possible affirmable decisions, by definition the trial court is without discretion.
>>
>> *Burkett v. Burkett*, 537 So. 2d 443, 446 (Miss. 1989). In a

> review for abuse of discretion, the appellate court will "consider whether the decision was one of those several reasonable ones which could have been made." *Id*. **"A finding of abuse of discretion absent a definite and firm identification of clear error violates time-honored standard-of-review principles."** *Ferguson v. Univ. of Miss. Med. Ctr.*, 179 So. 3d 1060, 1067 (¶31) (Miss. 2015).

*Nunnery v. Nunnery*, 195 So. 3d 747, 752 (Miss. 2016).

(Emphasis added).

¶32. There is a presumption in favor of arbitration, which the party claiming waiver must overcome. In this case, the burden was on Jenkins to prove the defendants had waived that right. In order for the trial court to find that the defendants had waived arbitration, delay alone or participation in litigation alone would not be sufficient. Instead, Jenkins would have to prove that there was a "substantial and unreasonable delay in pursuing the right" *and* that the defendants had engaged in "active participation in the litigation process." *Horton,* 926 So. 2d at 180 (¶42). This two-part test was confirmed again in *Woodard v. Miller*, 326 So. 3d 439, 449-50 (¶41) (Miss. 2021):

> In *MS Credit Center, Inc. v. Horton*, 926 So. 2d 167, 180 (Miss. 2006), this Court held that "[a] defendant's failure to timely and reasonably raise and pursue the enforcement of any affirmative defense or other affirmative matter or right which would serve to terminate or stay the litigation, coupled with active participation in the litigation process, will ordinarily serve as a waiver."

*See also Murphy v. William Carey Univ.*, 382 So. 3d 1181, 1183 (¶1) (Miss. Ct. App. 2024); *Pruitt ex rel. Brooks v. Sargent*, 349 So. 3d 729, 731 (¶5) (Miss. 2022); *Cook v. Taylor*, 324 So. 3d 333, 338 (¶22) (Miss. Ct. App. 2021); *Alcatec LLC v. Jones Grp. of Miss. LLC*, 297 So. 3d 302, 310 (¶30) (Miss. Ct. App. 2020). In *Horton*, the supreme court left these factual

determinations to the trial courts, to be considered on a case-by-case basis. *Horton*, 926 So. 2d at 181 (¶45).

¶33. In the case at bar, Jenkins filed her complaint on May 9, 2023. On June 8, 2023, the attorney representing Homer Skelton Ford Inc. (Skelton) filed a "Notice of Special Appearance" stating that Skelton "will contest the allegations presented in the pleadings including, but not limited to, jurisdiction and venue." Ford Motor Company (Ford) filed its answer on June 9, 2023, and raised arbitration as an affirmative defense.

¶34. On May 31, 2024, the defendants filed a joint motion to compel arbitration and stay the proceedings. In this motion, the defendants asserted that at the time of her purchase of the used 2017 Infiniti QX60 vehicle from Skelton on March 4, 2022, Jenkins signed a valid arbitration agreement.[9] The defendants maintained that the arbitration agreement was valid and that the claims raised by Jenkins in her complaint fall within the scope of the agreement.[10] The defendants asked the circuit court to compel arbitration. Also on May 31, 2024, the defendants noticed the motion for a hearing on July 25, 2024.

¶35. On June 10, 2024, Jenkins filed her response to the motion to compel arbitration. In her response, Jenkins maintained that the motion to compel was filed more than a year after she filed her complaint. She argued that the defendants had been actively participating in the

---

[9] While the motion stated that a copy of the arbitration agreement was attached to the motion, no such attachment appears in the record. However, on June 3, 2024, the defendants filed a "Evidentiary Submission to Ford Motor Company and Homer Skelton Ford, Inc.'s Motion to Compel Arbitration and Stay Proceedings," to which the arbitration agreement was attached as an exhibit.

[10] On appeal, Jenkins does not challenge the validity of the agreement or that the claims fall within the scope of the agreement.

litigation process during this one-year period. Jenkins asked the trial court to find that the defendants had waived their right to compel arbitration.

¶36.    On June 17, 2024, the defendants filed their reply to Jenkins' response. In their reply, the defendants maintained that they had not actively participated in the litigation process to the extent the court should find that they had waived their right to compel arbitration. Further, they explained that the delay in filing the motion to compel was because Skelton was unable to find the actual signed arbitration agreement. A week after Skelton produced the document, the motion to compel was filed.

¶37.    The hearing was conducted on July 25, 2024. No witnesses were called, no testimony was taken, and no exhibits were offered into evidence. The trial court heard the arguments of counsel and took the matter under advisement. The court entered its "Order on Motion to Compel Arbitration and to Stay Proceedings" on July 30, 2024. In this order, the court first addressed the delay in seeking to enforce the arbitration agreement by stating:

> It is certainly the case that the Defendants failed to assert their right to arbitration until well after the eight (8) month presumptive waiver. Indeed, they waited nearly thirteen (13) months. While the Court questions the Defendants given reason for such delay, namely that they were waiting to obtain a copy of the subject arbitration agreement, an arbitration agreement which Homer Skelton was a signatory, because the Court finds that neither Defendant actively participated in the litigation process, it need not spend any additional time evaluating the timeliness of such assertion, nor the asserted justification for the nearly thirteen (13) month delay.

Because the court had found that the defendants had not actively participated in the litigation process, the court determined that there was no reason to further consider whether there had been an unreasonable delay in filing the motion to compel arbitration. The court's opinion

22

then addressed each defendant's actions in this case. Regarding Skelton, the circuit court found:

> [T]he sum total of Homer Skelton's participation in the litigation process is its filing of a notice of special appearance, wherein it challenged, without limitation, the Court's jurisdiction and venue, its filing of a motion to extend its time to respond to discovery following the filing of motions to compel by Jenkins, and its cooperation in scheduling a hearing on the instant motion. The Court finds such minimal activity to be neither reflective of active engagement in the litigation process nor indicative of Homer Skelton's intent to forgo its right to arbitration.

Concerning Ford, the circuit court stated:

> Ford Motor's participation in the litigation process, while certainly more substantial than that of Homer Skelton, nevertheless fails, in this Court's opinion, to amount to the type of active participation Mississippi courts have found to constitute a waiver of arbitration. In this regard, while Jenkins points to *MS Credit Center v. Horton*, 926 So. 2d 167 (Miss. 2006) and *Pass Termite and Pest Control, Inc. v. Walker*, 904 So. 2d 1030 (Miss. 2004), cases in which our Supreme Court has found a waiver of arbitration by virtue of meaningful engagement in the litigation process, as analogous to the procedural history herein, the Court does not agree.

The court then distinguished the cases *Jenkins* cited from the actions of record in the case at bar. The trial court distinguished *Horton* by finding that "in our case, Ford Motor neither consented to a scheduling order nor conducted Jenkins' deposition, two activities which this Court would agree to be indicative of an intention to forgo the right to arbitration." The trial court distinguished the present case from *Pass Termite* by stating, "Here, not only has Ford Motor not demanded a jury trial, but it raised the affirmative defense of arbitration in its Answer." The court concluded by stating that it could find no case to suggest that such limited actions of record as taken by Ford in this case constitute a waiver of arbitration. Again, as noted in the trial court's order, and elsewhere in the record, the extent of Ford's

actions of record in this case are as follows:

| | |
|---|---|
| June 9, 2023 | Ford filed its Answer to Jenkins Complaint and set out arbitration as an affirmative defense. Ford also propounded discovery requests to Jenkins. This included interrogatories, requests for production of documents and a notice to take the deposition of Jenkins; however, no such deposition was taken. Jenkins responded to the requests for written discovery on July 10, 2023. |
| February 1, 2024 | Ford filed notice of intent to serve subpoenas for documents upon Infiniti related to the used vehicle sold by Skelton to Jenkins. The subpoenas were issued on March 5, 2024. |
| March 6, 2024 | Ford filed notice that it had served responses to Jenkins' discovery requests. |
| May 31, 2024 | Ford filed its joint motion to compel arbitration |

While Ford did not file anything of record, at the hearing Ford told the court that it had requested that Skelton provide Ford with a copy of the arbitration agreement. Once the arbitration agreement was given to Ford, the motion to compel was filed a week later.

¶38. The majority opinion relies upon its finding that there was an unreasonable delay by the defendants in pursuing arbitration and that such delay prejudiced the plaintiff. However, the majority forgets that the test for waiver of arbitration has two parts. As shown above, the circuit judge made no finding as to the reasonableness of the delay. Instead, the circuit judge's ruling was based upon the second prong of the test. Here, the circuit judge clearly and meticulously considered the facts shown of record and our precedent on active participation in litigation. The circuit judge made a factual finding that the defendants' limited participation in litigation was insufficient to constitute a waiver of arbitration.

24

¶39. According to our standard of review, we must affirm the trial court's decision unless "we have a definite and firm conviction that the circuit court committed a 'clear error of judgment' in reaching its conclusion." *Fairchild*, 403 So. 3d at 727 (¶35). I cannot say that the circuit judge committed a "clear error of judgment" by compelling arbitration under the facts of this case. Therefore, I would affirm the circuit court's decision in this matter.

**BARNES, C.J., WILSON, P.J., AND LASSITTER ST. PÉ, J., JOIN THIS OPINION.**