# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2024-CA-00251-SCT

*ROBERT C. WIGGINS*

*v.*

*SOUTHERN SECURITIES GROUP, LLC AND
BRANDI HOOVER*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/07/2024 |
| TRIAL JUDGE: | HON. ROBERT B. HELFRICH |
| TRIAL COURT ATTORNEYS: | L. GRANT BENNETT, SR. |
| | S. CHRISTOPHER FARRIS |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | S. CHRISTOPHER FARRIS |
| ATTORNEY FOR APPELLEES: | L. GRANT BENNETT, SR. |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED - 12/04/2025 |
| MOTION FOR REHEARING FILED: | |

**BEFORE KING, P.J., GRIFFIS AND BRANNING, JJ.**

**GRIFFIS, JUSTICE, FOR THE COURT:**

¶1.     On April 1, 2018, Robert C. Wiggins and Brandi Hoover, both financial advisors, executed two documents. The first document was an operating agreement that designated them as members of Southern Securities Group, LLC (SSG). The operating agreement included a noncompete provision as well as a mediation and an arbitration provision. The second document was a purchase-and-sale contract under which Hoover purchased Wiggins's interest in SSG. Under the purchase-and-sale contract, Wiggins remained employed at SSG after the buyout was complete and could only be terminated for cause.

¶2.     In January 2024, SSG and Hoover filed a complaint in circuit court alleging that

Wiggins had been terminated for cause and was in violation of the noncompete provision. SSG and Hoover requested, among other things, a temporary restraining order, which the trial court granted. SSG and Hoover then moved for a preliminary injunction against Wiggins to enjoin against further violation of the noncompete provision. In response, Wiggins filed a "motion to dissolve the temporary restraining order and deny the motion for preliminary injunction" as well as a motion to compel mediation and/or arbitration and to stay the proceedings. Wiggins claimed that once Hoover purchased his ownership interest in SSG, he was no longer bound by the operating agreement, including the noncompete provision. Wiggins further claimed he was wrongfully terminated.

¶3.    After a hearing, the trial court granted SSG and Hoover's motion for preliminary injunction and "continue[d] injunctive relief until . . . the merits of this civil action and its claims [we]re resolved[.]"  The trial court denied Wiggins's "motion to dissolve the temporary restraining order and deny the motion for preliminary injunction" and his motion to compel mediation and/or arbitration and to stay the proceedings.

¶4.    Wiggins now appeals. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶5.    Wiggins formed SSG, a wealth-management firm, in 2008. Hoover began her employment with SSG in June 2017. On April 1, 2018, Wiggins sold his ownership interest in SSG to Hoover.[1] As part of the business transaction, Wiggins and Hoover executed two documents, a limited-liability-company operating agreement and a purchase-and-sale

---

[1] Wiggins owned 80 percent of the company, and Hoover owned 20 percent.

contract.

¶6.     Under the purchase-and-sale contract, Hoover obtained an additional 20 percent membership interest in SSG each year until Wiggins's entire membership interest was purchased.[2] Hoover agreed that after the completion of the buyout, Wiggins would continue to be employed at SSG at "a salary consistent with his past W-2 earnings . . . and may only be terminated for cause." The operating agreement, which noted Hoover's buyout of Wiggins's interest in SSG, included a noncompete provision as well as a mediation and an arbitration provision.

¶7.     Hoover's purchase of Wiggins's interest in SSG was completed on June 1, 2022. Wiggins remained employed at SSG until January 3, 2024, when he was terminated for cause, specifically gross insubordination.

¶8.     The day after his termination from SSG, Wiggins started working at another wealth-management firm that performs the same type of services as SSG. As a result, on January 25, 2024, SSG and Hoover filed a complaint against Wiggins in the Circuit Court of Forrest County.

¶9.     In their complaint, SSG and Hoover alleged claims for breach of contract, tortious breach of contract, breach of implied covenant of good faith and fair dealing, promissory estoppel, equitable estoppel, and unjust enrichment. SSG and Hoover requested a temporary restraining order; a temporary injunction and/or permanent injunction enjoining Wiggins from violating the noncompete provision; as well as economic damages, noneconomic

---

[2] Hoover paid Wiggins a total of $500,000 for his interest in SSG.

3

damages, costs of litigation including attorneys' fees, pre and postjudgment interest, punitive damages, and a constructive trust on any monetary proceeds derived by Wiggins through actions violative of the noncompete provision. SSG and Hoover also filed a motion for an expedited hearing for a temporary restraining order and/or injunctive relief.

¶10. The trial court entered a temporary restraining order on January 26, 2024. SSG and Hoover then filed a motion for preliminary injunction and asked the trial court to set the motion for a hearing as soon as possible "to prevent [them] from sustaining any further immediate and irreparable injury, loss, or damage."

¶11. In response, Wiggins filed a "motion to dissolve the temporary restraining order and deny the motion for preliminary injunction." Wiggins asserted that he stopped being a member of SSG on June 1, 2022, when Hoover's purchase of SSG was finally complete and that he is therefore not bound by the operating agreement, including the noncompete provision. Wiggins further asserted that he was not terminated for cause but was wrongfully terminated because he would not agree to a pay reduction. Wiggins also filed a motion to compel mediation and/or binding arbitration and to stay the proceedings. Wiggins asserted that under the operating agreement, any disputes between the parties were to be submitted to mediation and/or arbitration. He requested that the trial court stay the proceedings including the temporary restraining order and motion for preliminary injunction and send the matter to mediation, arbitration, or both.

¶12. After a hearing, the trial court granted SSG and Hoover's motion for preliminary injunction, denied Wiggins's "motion to dissolve the temporary restraining order and deny

4

the motion for preliminary injunction," and denied Wiggins's motion to compel mediation and/or arbitration and to stay the proceedings. The trial court found that "[b]ecause of the inconsistencies of the [operating] [a]greement . . . , this dispute with various claims [wa]s not one that the parties agreed to or intended . . . would be subject to the [m]ediation and [a]rbitration clauses[.]" The trial court further found that based on the evidence presented at the hearing, "there [wa]s a [n]oncompete [p]rovision binding on [Wiggins]," and it therefore enjoined Wiggins from competing with SSG in violation of the noncompete provision.

¶13. Wiggins filed in this Court a petition for interlocutory appeal. In his request, Wiggins raised three issues, two of which questioned whether he was bound by the noncompete provision. The third issue questioned whether the trial court erred by denying his motion to compel mediation and/or binding arbitration and to stay the proceedings.

¶14. In response to Wiggins's petition for interlocutory appeal, the Court entered an en banc order. In its order, the Court noted that the "pleading s[ought] interlocutory review of an [o]rder . . . which included the denial of Wiggins's [m]otion to [c]ompel [m]ediation and/or [b]inding [a]rbitration and [s]tay the [p]roceedings" and that "[t]he Court has previously taken petitions for interlocutory appeal based upon arbitration rulings and accepted such for filings as a notice of appeal." En Banc Order, *Wiggins v. S. Sec. Grp., LLC*, No. 2024-M-00251-SCT (Miss. June 6, 2024). As a result, the Court concluded that Wiggins's request for interlocutory appeal was "accepted for filing as a notice of appeal."

5

*Id.*[3]  Notably, the Court did not restrict or limit consideration on appeal to the mediation and/or arbitration issue.

¶15.  Wiggins timely filed a notice of appeal based on the Court's en banc order.  On appeal, Wiggins argues the trial court erred by granting SSG and Hoover's motion for preliminary injunction and by denying his motion to compel mediation and/or arbitration and to stay the proceedings.  Regarding the preliminary injunction, Wiggins argues the trial court erred by finding he was bound by the operating agreement's noncompete provision and by failing to consider his defense of wrongful termination.

## DISCUSSION

*I.*   *Whether the trial court erred by granting SSG and Hoover's motion for preliminary injunction.*

¶16.  Mississippi Rule of Civil Procedure 65(a) "authorizes parties to seek . . . preliminary injunctions in civil cases in which permanent injunctive relief or other relief is being sought." M.R.C.P. 65 advisory comm. n.  "The purpose of a preliminary injunction is to provide injunctive relief until the merits of the case are resolved."  *Id.*

A party moving for preliminary injunctive relief pursuant to Rule 65(a) must

---

[3] The dissent asserts that "[w]hen a majority of [this] Court converted Wiggins's petition for interlocutory appeal to a notice of appeal in order to review the trial court's order denying arbitration . . . [,] it wholly ignored and undermined the . . . Court's 'but one procedure' holding [in *Sawyers v. Herrin-Gear Chevrolet Co., Inc.*, 26 So. 3d 1026, 1032 (Miss. 2010)]."  Diss. Op. ¶ 37.  The dissent argues, "instead of reaching the merits of the case, the Court should dismiss it."  Diss. Op. ¶ 34.  While we respect the dissent's position, this issue was previously considered and decided by the Court.  Indeed, the dissent previously addressed its position with the Court, and the majority of the Court agreed "that the [petition for interlocutory appeal] should be accepted for filing as a notice of appeal." En Banc Order, *Wiggins v. S. Sec. Grp., LLC*, No. 2024-M-00251-SCT (Miss. June 6, 2024). Based on the Court's en banc order, Wiggins filed his notice of appeal.

demonstrate that "(i) there exists a substantial likelihood that the [movant] will prevail on the merits; (ii) the injunction is necessary to prevent irreparable harm; (iii) the threatened injury to the [movant] outweighs the harm an injunction might do to the [opposing party]; and (iv) granting a preliminary injunction is consistent with the public interest."

*Id.* (alterations in original) (quoting ***Littleton v. McAdams***, 60 So. 3d 169, 171 (Miss. 2011)).

"Motions for preliminary injunctions are within the trial court's discretion." *Id.* (citing ***City of Durant v. Humphreys Cnty. Mem'l Hosp.***, 587 So. 2d 244, 250 (Miss. 1991)). Questions of law are reviewed de novo. ***HWCC-Tunica, Inc. v. Miss. Dep't of Revenue***, 296 So. 3d 668, 673 (Miss. 2020) (quoting ***Campbell Props., Inc. v. Cook***, 258 So. 3d 273, 275 (Miss. 2018)).

> *A.    Whether the trial court erred by finding the noncompete provision was binding on Wiggins.*

¶17.    The operating agreement's noncompete provision provides as follows:

> **1.6 Noncompete Provision.**  For the duration of the time period when a Member is affiliated with the Company, and for a period of two (2) years thereafter, the Member will not, within a forty (40) mile radius of the city of Hattiesburg, Mississippi, directly or indirectly, either as proprietor, stockholder, partner, officer, employee or otherwise, distribute, sell, offer to sell, or solicit any orders for the purchase of distribution of any products or services which are similar to those distributed, sold or provided by the Company.

¶18.    The trial court found that based on evidence presented at the preliminary injunction hearing, the "[n]oncompete [p]rovision [was] binding on [Wiggins]."   The trial court explained that "[Hoover's] purchase of [Wiggins]'s interest in the business included the goodwill of [Wiggins] and for his adherence to [the] existing [n]oncompete [p]rovision."  The trial court concluded that the record evidence received and heard at the hearing

7

demonstrated that

> (i) there exists a substantial likelihood that [SSG and Hoover] will prevail on the merits (based on the evidence and testimony regarding the [n]oncompete [p]rovision and [Wiggins]'s admissions and other testimony that [Wiggins] continues to do business in violation of the [n]oncompete [p]rovision's terms), (ii) the injunction is necessary to prevent irreparable harm (based on the testimony of existing and continuing revenue losses and loss of business goodwill with clients and evidence of [Wiggins] doing business within a 40 mile radius of the city of Hattiesburg, Mississippi), (iii) the threatened injury to [SSG and Hoover] outweighs the harm an injunction might do to [Wiggins] (based in part, on the testimony of damages and lost annual revenue by [SSG and Hoover] in the recent past and continuing into the future also with loss or business goodwill), and (iv) granting a preliminary injunction is consistent with the public interest (it is in the public interest to enforce valid provisions in contracts including a [n]oncompete [p]rovision).

The trial court granted "a preliminary injunction against . . . Wiggins to enjoin him from [competing] with [SSG] in violation of the [n]oncompete [p]rovision . . . for a period of two (2) years from and after the date of the end of his affiliation with [SSG], that being his termination date of January 3, 2024." Wiggins disagrees with the trial court and questions whether he is bound by the terms of the operating agreement, including the noncompete provision.

¶19. The operating agreement was "made and entered into . . . by and among . . . Wiggins, and . . . Hoover, who are the members . . . of [SSG][.]" In the operating agreement, Wiggins and Hoover refer to themselves as "Member" or "Members." Under the noncompete provision, a "Member," i.e., Wiggins or Hoover, cannot compete with SSG while affiliated with the company and for two years thereafter. In other words, "[f]or the duration of the time period when [Wiggins or Hoover] is affiliated with the Company, and for a period of two (2) years thereafter, [Wiggins or Hoover] will not [compete with] the Company."

8

¶20.    Wiggins asserts confusion over what is meant by "two (2) years thereafter[.]" Wiggins questions whether the noncompete provision begins "two years after he has become affiliated with the [c]ompany" or "two years after he is no longer affiliated with the company[.]" The trial court properly determined that a clear reading of the noncompete provision reflects the latter. Under the noncompete provision, Wiggins cannot compete with SSG "[f]or the duration of" his affiliation with the company, i.e., while affiliated with SSG, and for "two (2) years thereafter," i.e., two years after his affiliation with SSG ends.

¶21.    According to Wiggins, his affiliation with SSG ended in June 2022, when Hoover's purchase of SSG was complete. Wiggins asserts that the "operating agreement is . . . binding on all *members* of the company," and he argues that he "is not bound by the . . . operating agreement" since he "stopped being a member in June of 2022" and "was just an employee after the purchase was completed." Wiggins claims that because he is not bound by the operating agreement, the noncompete provision does not apply to him. But we agree with the trial court that at this stage in litigation, based on evidence presented at the preliminary-injunction hearing, the "[n]oncompete [p]rovision [was] binding on [Wiggins]."

¶22.    It is undisputed that the noncompete provision is included only in the operating agreement. There is no noncompete provision included in the purchase-and-sale contract. But the purchase-and-sale contract was *entered simultaneously with* the operating agreement and was part of the same business transaction.[4]

---

[4] The operating agreement was drafted and executed by Wiggins and Hoover so that Hoover could be added as a member of SSG and purchase Wiggins's membership interest in SSG. Hoover explained that Wiggins originally operated SSG, but when she and Wiggins decided that she would purchase Wiggins's interest in SSG, she and Wiggins created the

9

¶23. Additionally, both agreements reference each other. The operating agreement acknowledges that the purchase-and-sale contract was executed by Wiggins and Hoover on the same day and that the contract provides for the buyout of Wiggins's interest in SSG. And the purchase-and-sale contract references the operating agreement and notes that Wiggins and Hoover "have entered into the . . . agreement."

¶24. Hoover's significant investment in acquiring Wiggins's business would have been unreasonable and illogical without the inclusion of a noncompete provision to protect that investment. Wiggins was fully aware of the negotiated noncompete provision, and he clearly acknowledged and accepted the noncompete provision when he simultaneously signed both the operating agreement and the purchase-and-sale contract. Thus, based on the evidence presented at the preliminary-injunction hearing, the trial court did not err by finding that the noncompete provision was binding on Wiggins and that Wiggins was enjoined from competing with SSG "for a period of two (2) years from and after the date of the end of his affiliation with [SSG], that being his termination date of January 3, 2024."

> B. *Whether the trial court erred by failing to consider Wiggins's defense of wrongful termination.*

¶25. The purchase-and-sale contract notes that Wiggins "shall continue to be employed at [SSG] [at] a salary consistent with his past W-2 earnings after the completion of the buyout hereunder for so long as he chooses, and may only be terminated for cause." Wiggins asserts that he "was not an employee at will" but, instead, "had a written employment contract that

operating agreement with the intent of Hoover becoming the sole member/owner of SSG. Wiggins, however, would remain employed at SSG.

10

clearly stated the amount of his salary while employed by [SSG]." Wiggins testified that he was not paid a salary consistent with his prior W-2 earnings and that when he advised Hoover that she could not reduce his salary, he was terminated "[w]ithin minutes" for gross insubordination. He argues, "[t]his was clearly a wrongful termination that the trial court should have considered as a viable defense to enforcement of the . . . non-compete provision of the . . . operating agreement." But this issue is premature.

¶26. Although the trial court never specifically addressed or determined whether Wiggins was wrongfully terminated or entitled to back profits, the trial court granted SSG and Hoover's motion for preliminary injunction and "continue[d] th[e] injunctive relief *until this matter c[ould] be heard completely*." (Emphasis added.) We find the trial court's ruling was proper. As previously stated, this case is before us following the trial court's grant of a preliminary injunction. As a result, this matter has not been fully litigated or heard. Thus, while Wiggins's argument is premature, he may continue to assert and pursue in the trial court his wrongful-termination claim and request for back profits.

    *II.    Whether the trial court erred by denying Wiggins's motion to compel mediation and/or binding arbitration and to stay the proceedings.*

¶27. Wiggins argues the trial court erred by denying his motion to compel mediation and/or arbitration and to stay the proceedings.[5] In support of his argument, Wiggins relies on Article X of the operating agreement, entitled "ARBITRATION AND MEDIATION OF

---

    [5] In his appellate brief, Wiggins asserted, "if the Court determines the LLC operating agreement is no longer binding on [him], then the mediation/arbitration provision is no longer enforceable. If the [C]ourt determines that it is still binding, then the mediation/arbitration provision should be enforced and this matter remanded for mediation and then arbitration."

11

DISPUTES."  Section 10.1 provides:

> **10.1 Disputes Among Members.** The Members agree that in the event of any dispute or disagreement solely between or among any of them arising out of, relating to or in connection with this Agreement or the Company or its organization, formation, business or management ("Member Dispute"), the Members shall use their best efforts to resolve any dispute arising out of or in connection with this Agreement by good-faith negotiation and mutual agreement. The Members shall meet at a mutually convenient time and place to attempt to resolve any such dispute.
>
> However, in the event that the Members are unable to resolve any Member Dispute, such parties shall first attempt to settle such dispute through a non-binding mediation proceeding. In the event any party to such mediation proceeding is not satisfied with the results thereof, then *any unresolved disputes shall be finally settled in accordance with a binding arbitration proceeding*. In no event shall the results of any mediation proceeding be admissible in any arbitration or judicial proceeding.

(Emphasis added.)

¶28.  But in addition to Section 10.1 under Article X, the operating agreement also includes Section 12.14 under Article XII "MISCELLANEOUS."  Section 12.14 provides in relevant part as follows:

> **12.14 Jurisdiction and Venue/Equitable Remedies.** The Company and each Member hereby expressly agrees that *if, under any circumstances, any dispute or controversy arising out of or relating to or in any way connected with this Agreement shall, notwithstanding Article X of this Agreement, be the subject of any court action at law or in equity, such action shall be filed exclusively in the courts of the State of Mississippi in the Circuit Court of Forrest County* by the Member that is the plaintiff in the action, or that initiates the proceeding or arbitration. *Each Member agrees not to commence any action, suit or other proceeding arising from, relating to, or in connection with this Agreement except in such a court* and each Member irrevocably and unconditionally consents and submits to the personal and exclusive jurisdiction of such courts for the purposes of litigating any such action, and hereby grants jurisdiction to such courts and to any appellate courts having jurisdiction over appeals from such courts or review of such proceedings.

(Emphasis added.)

¶29.   The trial court denied Wiggins's motion, finding that "[b]ecause of the inconsistencies . . . in Article X, Section 12.14[,] and elsewhere, . . . this dispute with various claims is not one that the parties agreed to or intended . . . would be subject to . . . [m]ediation and [a]rbitration[.]"  "The grant or denial of a motion to compel arbitration is reviewed de novo." *Tupelo Auto Sales, Ltd. v. Scott*, 844 So. 2d 1167, 1169 (Miss. 2003) (citing *E. Ford, Inc. v. Taylor*, 826 So. 2d 709, 713 (Miss. 2002)).  In order to determine whether to compel arbitration, "the Court employs a two-part test: (1) 'whether the parties intended to arbitrate the dispute,' and (2) 'whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims.'"  *S. Cent. Heating, Inc. v. Clark Constr. Inc.*, 342 So. 3d 160, 165 (Miss. Ct. App. 2022) (internal quotation marks omitted) (quoting *Harrison Cnty. Com. Lot LLC v. H. Gordon Myrick Inc.*, 107 So. 3d 943, 949 (Miss. 2013)).

¶30.   As noted by the trial court, Sections 10.1 and 12.14, when read together, do not demonstrate a clear, express intent by the parties to arbitrate this dispute.  Moreover, as in this case, the enforcement of a noncompete provision often demands immediate relief by way of a temporary restraining order or a preliminary injunction, which cannot always be promptly obtained through the initiation of mediation and/or arbitration.  As a result, the trial court did not err by denying Wiggins's motion to compel mediation and/or arbitration and to stay the proceedings.

## CONCLUSION

¶31.   The trial court's "Order granting [SSG and Hoover's] preliminary injunction, denying

[Wiggins's] motion to compel mediation and/or arbitration and for stay, and denying [Wiggins's] motion to dissolve TRO and deny preliminary injunction" is affirmed.

¶32. **AFFIRMED.**

**RANDOLPH, C.J., KING, P.J., MAXWELL, CHAMBERLIN, ISHEE, SULLIVAN AND BRANNING, JJ., CONCUR. COLEMAN, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION.**

**COLEMAN, PRESIDING JUSTICE, DISSENTING:**

¶33. After a years-long history of inconsistent approaches to appealing an order granting or denying a motion to compel arbitration, as shown below, fifteen years ago the Mississippi Supreme Court stated, without nuance or equivocation, that the *only* acceptable mechanism for such an appeal is a properly filed notice of appeal. The instant appeal began when Robert C. Wiggins, the defendant and counter-plaintiff in the trial court, filed a petition for interlocutory appeal pursuant to Mississippi Rule of Appellate Procedure 5. Wiggins requested review of the trial court's grant of a temporary restraining order and preliminary injunction.

¶34. If we are to take our own caselaw seriously, which I must admit I believe would be a good idea, an order granting or denying a motion to compel arbitration must be appealed via a properly filed notice of appeal. Accordingly, instead of reaching the merits of the case, the Court should dismiss it.

### ANALYSIS

I.    **The order denying Wiggins's motion to compel arbitration could only have been appealed via a properly filed notice of appeal.**

¶35. In *Sawyers v. Herrin-Gear Chevrolet Co., Inc.*, 26 So. 3d 1026, 1031-32 (¶¶ 12-14)

14

(Miss. 2010), we acknowledged that, prior to that case, we had been inconsistent when it came to the correct vehicle to bring an appeal of a trial court's decision on a motion to compel arbitration. The Court listed several earlier cases that illustrated a veritable smorgasbord of approaches, including the approach used here, the filing of a petition for interlocutory appeal. *Id.* at 1031-32 (¶ 12). Specifically listed among the confusion-causing cases was *Smith ex rel. Smith v. Captain D's, LLC*, 963 So. 2d 1116 (Miss. 2007), in which, like the case *sub judice*, the Court converted a petition for interlocutory appeal to a notice of appeal. *Sawyers*, 26 So. 3d at 1031 (¶ 12) (citing *Smith*, 963 So. 3d at 1118-19)).

¶36. The *Sawyers* Court acted decisively to bring absolute clarity to the issue, writing: "We thus wish to establish via today's case *but one procedure* for this Court's review of a trial court's grant *or denial* of a motion to compel arbitration, and *that one procedure shall be via a direct appeal* pursuant to the provisions of Mississippi Rules of Appellate Procedure 3 & 4." *Id.* at 1032 (¶ 14) (emphasis added).

¶37. There is no other way to read the above-quoted pronouncement, following as it does the example of *Smith* as a case contributing the confusion *Sawyers* sought to allay, than as an repudiation of the Court's conversion of a petition for interlocutory appeal into a notice of appeal as happened both in *Smith* and here. When a majority of the Mississippi Supreme Court converted Wiggins's petition for interlocutory appeal to a notice of appeal in order to review the trial court's order denying arbitration—relief for which Wiggins did not even ask in his petition for interlocutory appeal—it wholly ignored and undermined the *Sawyers* Court's "but one procedure" holding. *Sawyers*, 26 So. 3d at 1032 (¶ 14). Now, once again,

15

the Court has allowed multiple and confusing options for appellate review of an order granting or denying a motion to compel arbitration.

¶38. The majority sidesteps its refusal to follow *Sawyers* by relying on the earlier order from the Court converting Wiggins's petition to a notice of appeal. To be sure, the majority's response *is* a sidestep because it leaves in place the confusion created today by following a procedure to allow an appeal that, in 2010, the Court without ambiguity held would no longer be allowed. The policy of respecting and following precedent "is based on the assumption that consistency and definiteness in the law are the major objectives of the legal system." *Payton v. State*, 266 So. 3d 630, 631 (¶ 19) (Miss. 2019) (internal quotation marks omitted) (quoting *Hye v. State*, 162 So. 3d 750, 755 (Miss. 2015) (citing *Laurel Daily Leader, Inc. v. James*, 224 Miss. 654, 80 So. 2d 770, 780-81 (1955) (Gillespie, J., special opinion))). That the majority failed to follow *Sawyers* when it entered the earlier order should not prevent the Court from respecting its precedent now. In ignoring *Sawyer*—twice—the majority restores the state of confusion *Sawyers* had allayed.

> **II. The filing of a proper notice of appeal is a jurisdictional prerequisite, and, without it, the Court did not have jurisdiction to convert the petition for interlocutory appeal to a notice of appeal.**

¶39. To perfect an appeal as a matter of right, one must file a timely notice of appeal. "Timely filing of a notice of appeal is jurisdictional." *Malouf & Malouf, PLLC v. Est. of Ivison (In re Est. of Ivison)*, 371 So. 3d 172, 177 (¶ 24) (Miss. 2023) (internal quotation marks omitted) (quoting *Busby v. Anderson*, 978 So. 2d 637, 638-39 (Miss. 2008) (citing *Miss. Dep't of Mental Health v. Hall*, 936 So. 2d 917, 929 (Miss. 2006))). Put differently,

16

the notice of appeal "is *the jurisdictional action* that initiates the appeal." ***Am. Tower Asset Sub, LLC v. Marshall Cnty.***, 324 So. 3d 300, 303 n.3 (Miss. 2021).

¶40. "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." ***Miss. Dep't of Revenue v. AT&T Corp.***, 101 So. 3d 1139, 1149 (¶ 26) (Miss. 2012) (internal quotation marks omitted) (quoting ***Steel Co. v. Citizens for a Better Env't***, 523 U.S. 83, 94 (1988)). In other words, absent the satisfaction of the jurisdictional prerequisite of a notice of appeal, we have no jurisdiction. Without jurisdiction, we may only dismiss the cause. Converting a petition for interlocutory appeal to a notice of appeal is a "function," to use the above-quoted term, unavailable to the Court.

**CONCLUSION**

¶41. As long as the ***Sawyers*** decision remains good law, I cannot join the majority of my colleagues in entertaining an appeal of a trial court's arbitration decision that was brought via any mechanism other than a properly filed notice of appeal. When we, as the Supreme Court of Mississippi, announce a rule such as the "but one procedure" rule of ***Sawyers***, we should follow it or overrule it rather than create ambiguity and uncertainty by ignoring it when it suits us. Moreover, because Wiggins failed to file the required notice of appeal, the Court never had the authority to convert the petition for interlocutory appeal to a notice of appeal. Accordingly, and with respect, I dissent.

17